525 P.2d 347

**Norman S. STANDALL and Anita J. Standall, husband and wife, Plaintiffs-Respondents,**

**v.**

**Archie TEATER and Patricia Teater, husband and wife, Defendants-Appellants.**

**No. 11308.**

Supreme Court of Idaho.

July 26, 1974.

Samuel Kaufman, Jr., Anderson, Kaufman, Anderson & Ringert, Boise, for defendants-appellants.

Severt Swenson, Jr., Becker, Swenson & Shaw, Gooding, for plaintiffs-respondents.

McFADDEN, Justice.

Norman S. Standal and Anita J. Standal, husband and wife (plaintiffs-appellants), instituted this action to quiet title to real

property owned by them, alleging in their complaint that Archie and Patricia Teater, husband and wife, claimed an interest in their property. The Teaters (defendants-appellants) answered and counterclaimed alleging that they owned certain real property described in their counterclaim, basing their ownership of the property on adverse possession. The trial court, after hearing the case entered findings of fact, conclusions of law and decree adverse to the Teaters, and judgment was entered quieting title in the Standals. The Teaters then perfected this appeal. We affirm the judgment in part, and reverse in part.

The lands in question are located in the Hagerman Valley in Gooding County. The Standal property is in Lot 1 of Section 28, Township 6 South, Range 13 East of the Boise Meridian. The Teater property, as described in their deed is a part of Lot 3, Section 21, Township 6 South, Range 13 East of the Boise Meridian. In their counterclaim they also assert ownership of property located in Lot 1 of Section 28, claimed by the Standals. The following is a sketch of the property claimed by the respective parties, and while not drawn to scale, illustrates the claims of the parties.

TRACT A – Enclosed by chain link fence and natural break.

LEGEND
●—●—●—● Chain link fence
×—×—×—× Barbed wire fence as claimed by Teaters

Lot 3
Section 21
Twp. 6 South
Rge. 13 E.B.M.

Lot 1
Section 28
Twp. 6 South
Rge. 13 E.B.M.

TRACT A

TRACT B

267.3'

72'

TRACT B – Tract allegedly enclosed by barbed wire fence and claimed by Teaters

OLD U.S. HIGHWAY 30

NATURAL BREAK

C Corner Mark Established 1953

In substance the trial court found: (a) In 1951 the Teaters by deed obtained title to their property in Section 21; (b) The Standals purchased their property in Section 28 in 1962; (c) In 1953 the Teaters had an engineer survey and determine a new description of the land, following which they made a claim to land in Section 28 located within a barbed wire fence, which "was down and cattle could cross and recross"; (d) In 1970 the Teaters had another engineer survey the property "due to the fact that the Defendants [Teaters] were not satisfied with the survey * * * in 1953 * * *. That at the time the Defendant, Mr. Teater, stated that the Section line was not in the area determined by Mr. Riedesel [the engineer who surveyed it in 1970] and directed that he survey a line showed to him by the Defendant, Mr. Teater, which moved the entire October, 1953 survey south into Section 28"; (e) A chain link fence was constructed by the Teaters, but they testified they never considered this fence as their boundary; (f) The Standals and their predecessors paid all taxes levied on their property in Section 28 and the Teaters paid taxes on lands in Section 21 and paid no taxes on lands in Section 28; (g) The Teaters made no open adverse claim to Tract B until 1970 when they constructed a fence along the boundaries of the land they claimed, which fence was promptly dismantled by the Standals.

On the basis of the findings of fact, the trial court concluded that the Teaters failed to establish their claim to adverse possession under a written instrument (I.C. §§ 5–207, 5–208), or under an oral claim of title (I.C. §§ 5–209, 5–210), and entered judgment quieting title in favor of the Standals.

The appellants have assigned as error various findings of fact and conclusions of law contending that the findings were not sustained by the evidence and that the trial court misapplied the law in its conclusions. In summary, the appellants contend the trial court erred in holding,

(1) that the appellants failed to prove their claim of adverse possession to the land under a claim of a written instrument of title; and

(2) that the appellants failed to prove their claim of adverse possession of the lands by an oral claim and exclusive possession in excess of five years.

The Teaters purchased their property from Mr. and Mrs. Farnsworth, receiving a deed in 1951. Previously, in 1949, the Teaters and Stella Farnsworth had entered into a written memorandum whereby it was agreed the Farnsworths would sell the Teaters a tract of about one acre of land on a knoll. The purchase price was minimal and the Farnsworths were unwilling to have it surveyed. In January 1951, a deed was executed by the Farnsworths to the Teaters describing the property as

"A part of Lot 3, Section 21, Township 6 South Range 13 E.B.M., laying west of U.S. Highway 30 consisting of approximately ⅔ of an acre and described as: Commencing at a point where U.S. Highway 30 crosses the south line of Section 21, thence west 250 feet; thence approximately North 134 feet, thence in a Northeasterly direction 108 feet to the west line of U.S. Highway 30, then following the west side of U.S. Highway 30 South to point of beginning."

This property was along the old highway from Bliss to Hagerman, and lay west of the highway and east of a break or rather abrupt drop to the Snake River.

The Teaters commenced construction of their home on this property. During the course of construction, building materials were being pilfered, and in 1955 they constructed a 6 foot chain link fence topped by barbed wire to protect their property as is shown on the sketch, supra, as Tract A. The property was protected on three sides by the fence and on the west side by the break or drop-off.

In 1953, the Teaters had a survey made of their property and a new description prepared. They testified that the surveyor

established the southeast corner of their property on the west boundary of the highway with a marked rock. This point, Point C on the sketch, supra, was 267.3 feet southerly from the point where the south line of the chain link fence intersected the west boundary of the highway. Teaters claim that from this Point C they own all the property westerly to the break or drop-off, some 72 feet as they claimed, and then northerly from that line to the west end of the south line of their chain link fence (Tract B, sketch, supra).

The Teaters testified that they had made improvements in the claimed area by planting trees and maintaining the land in its natural rustic state. They also testified that they maintained an existing fence surrounding that area (Tract B).

Mr. Teater is a well-known artist, and he used the property south of the chain link fence in his work as the basis for painting, exemplifying the natural state of the area.

In 1970 the Teaters constructed a fence along the west and south side of the property they claim (Tract B). Standal testified that after the fence was built he pulled and stacked all the fence posts and rolled up the wires. He testified that in the area claimed by the Teaters he had hauled gravel out of a pit and sold some 3,000 yards of gravel to another person.

First, considering Teaters' claim to the disputed property based on adverse possession under a written claim of title (I.C. § 5–207, § 5–208), the trial court did

not err in denying this claim. Their deed called for property situate in Section 21. The evidence clearly established the section line crossed their property between their home and the chain link fence to the south. Nowhere in the record does there appear any "written instrument" setting out any foundation for the Teaters' claim to the property lying south of the section line. The description set out by the surveyor in 1953 did not fit within the claim urged by the Teaters, or within the description contained in their counterclaim. The subsequent 1970 survey could not be used for any basis of adverse possession under a written claim. I.C. § 5–207. The Teaters, who claim the property by adverse possession, had the burden of proof to establish their claim. Hamilton v. Village of McCall, 90 Idaho 253, 409 P.2d 393 (1965). See, Smith v. Smith, 95 Idaho 477, 511 P. 2d 294 (1973); White v. Boydstun, 91 Idaho 615, 428 P.2d 747 (1967). The appellants failed in this regard.

As concerns appellants' claim as to Tract B under an oral claim of title, I.C. §§ 5–209 [1] and 5–210,[2] the trial court denied this claim, first because the Leaters failed to establish payment by them of any taxes assessed against property situate in Section 28, and secondly, they failed to establish that it was protected by any substantial enclosure. The trial court found that the barbed wire fence was down. The record fully sustains the trial court's determination that the barbed wire fence the Teaters contended bounded the area claimed by them was down and cattle could cross and recross

---

1. I.C. § 5–209. "Possession under oral claim of title.—Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely.

2. I.C. § 5–210. "Oral claim—Possession defined—Payment of Taxes.—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial inclosure.

2. Where it has been usually cultivated or improved.

Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

the area. This finding, supported by substantial, competent, although conflicting evidence, will not be disturbed by this court. Hafer v. Horn, 95 Idaho 621, 515 P.2d 1013 (1973); Enders v. Hubbard & Sons, Inc., 95 Idaho 590, 513 P.2d 992 (1973). I.C. § 5–210 requires that to constitute an adverse possession, the person claiming it must have protected it by a substantial enclosure. In this regard the Teaters failed in their proof concerning the claim of enclosure by a barbed wire fence.

■ However, it is the conclusion of this court that the trial court erred in not recognizing the Teaters' claim to that portion of Tract A between the section line, southerly to the chain link fence. The record discloses that the section line between Sections 21 and 28 was northerly of the chain link fence and that that area of Tract A enclosed by the chain link fence encroached upon ground the record title of which was in the Standals. Mr. Standal testified that at the time he purchased his property in 1962 he recognized that this chain link fence was encroaching upon land owned by him, but that he did not want to do anything about it at the time.

This court in a number of cases held that a fence can delineate the boundary of property regardless of the location of the actual boundary when the other elements of adverse possession are present. See, Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066 (1909); Mulder v. Stands, 71 Idaho 22, 225 P.2d 463 (1950); Calkins v. Kousouros, 72 Idaho 150, 237 P.2d 1053 (1951); Scott v. Gubler, 95 Idaho 441, 511 P.2d 258 (1973). The record is without dispute that the chain link fence was first constructed in 1955 and remained intact thereafter, and that this fence was a substantial enclosure within the meaning of I.C. § 5–210.

The trial court held that notwithstanding such an enclosure by the chain link fence, the Teaters failed to show that they had paid any taxes upon land situate in Section 28. The tax assessor testified that initially the Teaters were assessed for a portion of Lot 3 west of the highway in Section 21, and that in 1952 the closest he could determine the acreage was .28 acres. The assessor testified that in 1953 the property was designated as Tax Number 6, and that he determined it contained two-thirds of an acre, but that he rounded the acreage off at one acre for assessment purposes. The record does not show that the assessor ever described this property by a metes and bounds description, but only assessed it as "Tax 6, Sec. 21, T. 6 R. 13".

In 1973, in Scott v. Gubler, 95 Idaho 441, 511 P.2d 258, this court had before it an issue concerning the statutory requirement that taxes must be paid before a claim to land under adverse possession can be established. In fairness to the district judge and counsel, it should be pointed out that at the time of the trial of the instant case, none of them had the benefit of the decision in Scott v. Gubler, supra. In the *Scott* case this court reviewed at length prior decisions of this court and approved holdings from the Supreme Court of Indiana, and stated:

"[I]n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, and taxes are assessed by lot number or by government survey designation, rather than by metes and bounds description, payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the Indiana statute. Nasser v. Stahl, 126 Ind. App. 709, 134 N.E.2d 567 (1956); Echterling v. Kalvaitis, 235 Ind. 141, 126 N.E.2d 573 (1955). Several Idaho cases have expressed approval of a similar theory. See White v. Boydstun, 91 Idaho 615, 622, 428 P.2d 747 (1967); Beneficial Life v. Wakamatsu, 75 Idaho 232, 242, 270 P.2d 830 (1954); Calkins v. Kousouros, 72 Idaho 150, 156, 237 P.2d 1053 (1951); Mulder v. Stands, 71 Idaho 22, 26, 225 P.2d 463 (1950); Bayhouse v.

Urquides, 17 Idaho 286, 297–298, 105 P. 2d 1066 (1909)." 95 Idaho 441, 511 P.2d 260–261.

The rule quoted above in the *Scott* case is applicable to the factual situation here. In this case, since 1955 the Teaters maintained a substantial enclosure around their land. The Standals recognized this was an encroachment upon their land acquired in 1962. Over the years since acquiring their title the Teaters were assesesd only on the land designated as "Tax 6" and not on land described by metes and bounds. It is our conclusion that the Teaters, who paid all taxes on the property assessed to them over the years, as a matter of law did pay taxes on the whole of land designated as Tract A. This conclusion is further buttressed by the case of White v. Boydstun, 91 Idaho 615, 428 P.2d 747 (1967), where this court stated:

" * * * it should be noted that in the analogous situation concerning adverse occupation of land next to the boundary line between the property of the adverse claimant and his opponent, continuous adverse occupation will extend a true boundary line beyond the occupier's express deed limits, so that payment of taxes assessed on the deeded property is deemed payment of taxes on the lands in the claimant's possession. [Citations omitted.]" 91 Idaho at 622, 428 P.2d at 754.

See, Scott v. Gubler, supra; Hyde v. Lawson, 94 Idaho 886, 499 P.2d 1242 (1972); Beneficial Life v. Wakamatsu, 75 Idaho 232, 270 P.2d 830 (1954); Mulder v. Stands, supra; Bayhouse v. Urquides, supra.

It is thus our conclusion that the Teaters are entitled to a decree quieting title to all property within the boundaries of the chain link fence (Tract A), and that portion of the judgment must be reversed.

A judgment defining rights to land must be precise in its description. Norrie v. Fleming, 62 Idaho 381, 112 P.2d 482 (1941); Hedrick v. Lee, 39 Idaho 42, 227 P. 27 (1924). The record here fails to contain any metes and bounds description of Tract A sufficient to properly describe the parties' respective tracts of land. Unless the parties can furnish an agreed upon and adequate description of Tract A, the trial court shall order a survey by a disinterested, qualified engineer in order to obtain the necessary data for a description of the property sufficient for the purposes of this case. The costs of such survey shall be fixed by the court and be borne equally by the parties. The parties shall be furnished the results of such survey and be given an opportunity to be heard thereon. See, Lisher v. Krasselt, 94 Idaho 513, 492 P.2d 52 (1972). Thereafter, the trial court shall enter amended findings of fact, conclusions of law and judgment in conformity with the views expressed herein.

That portion of the judgment quieting title in the plaintiffs to land other than Tract A is affirmed, but that portion of the judgment concerning Tract A is reversed and the cause remanded for further proceedings. No costs allowed.

SHEPARD, C. J., and DONALDSON, McQUADE and BAKES, JJ., concur.