549 P.2d 1065

Charles Norman **FLYNN** and Mary B. Nelson **Murphy, Plaintiffs-Respondents,**

v.

**I. M. ALLISON and Ruth A. Allison, husband and wife, Defendants-Appellants.**

No. 11954.

Supreme Court of Idaho.

May 12, 1976.

Affirmed in part, reversed in part and remanded with directions.

Kenneth P. Adler, Council, for defenants-appellants.

Lary C. Walker, of Walker & Sanders, Weiser, for plaintiffs-respondents.

BAKES, Justice.

I. M. and Ruth Allison appeal from a judgment of the district court in Adams County which (1) quieted title in plaintiff respondent Charles Norman Flynn to a disputed strip of land along the southern border of Allisons' property, based on a finding that Flynn had perfected title to the land by adverse possession; (2) denied plaintiff respondent Mary Murphy, Allisons' grantor, relief in her request to reform the warranty deed which she gave to Allisons, rejecting her claim of mistake in the description in the deed; and (3) denied defendant appellants Allisons relief in their counterclaim against Mary Murphy for damages resulting from misdescription in the deed. Allisons attack the finding and conclusion of the district court that Flynn had perfected title to the disputed strip of land by adverse possession,

arguing that the payment of taxes requirement under I.C. § 5–210 [1] had not been satisfied, or in the alternative, Allisons claim that by quieting title to the property in Flynn and refusing Murphy's request to reform the deed, the district court should have granted them relief on their counterclaim for breach of the covenant of warranty of title. We affirm the district court's finding that Flynn had perfected title to the disputed property by adverse possession and its action in quieting title to the property in Flynn, but we reverse the district court's denial of relief to Allisons in their counterclaim for damages resulting from the breach of the covenant of warranty of title.

Plaintiff respondent Flynn instituted this action to quiet title in himself to the disputed strip of property which measures .27 acre (60 feet by 185 feet), claiming that he had perfected title to the property by adverse possession for a period in excess of five years. The disputed .27 acre is located at the northern boundary of a parcel of land in Adams County which Flynn has owned since 1960. It is at the southern boundary of a neighboring parcel now owned by defendant appellants I. M. and Ruth Allison, who purchased the property from defendant respondent Mary Murphy in 1969. Allisons claim ownership of the disputed property through their warranty deed from Murphy. However, Murphy claims that she intended to except the disputed piece from her deed to Allisons, but made a typographical error in the exception clause of the description in the deed. She joined with Flynn as plaintiff in this suit, deposited a correction deed with the trial court and sought a reforma-

tion of the Allisons' deed to conform to her intentions. Allisons denied Murphy's claim of a typographical error, and counterclaimed against Murphy for damages resulting from the partial failure of title to the land conveyed by Murphy to Allisons in her warranty deed.

The parcels of land in question lie north-south of each other along the Little Salmon River and are described in terms of "frontage feet" along the river. In 1960, Flynn purchased two contiguous 100-foot parcels, the northern one from a John Nelson and the other from John Olney, who presently owns property south of Flynn. At the time of purchase, the property was unsurveyed and unimproved; Flynn admitted that he had no idea where his actual boundaries were. In 1961, Boise Cascade Corporation commissioned a survey of the area in connection with a possible land trade. That transaction fell through, but the survey markers remained. Flynn thought that the Boise Cascade survey set his northern boundary and the southern boundary of the Murphy property, and he erected a fence according to the markers. In the following years he cleared the land, planted a lawn and trees, and located his septic tank in that area.

The Murphy property was unimproved; Mrs. Murphy lived in Riggins and visited the property about twice a year. She was aware of the Flynn boundary fence but was not aware that it was inaccurate. In 1967 she commissioned a survey of her parcel, preparatory to offering the property for sale. The survey revealed that Flynn had encroached about sixty feet north onto the Murphy property—that there was an "overlap" which was the distance

1. "5-210. *Oral claim—Possession defined—Payment of taxes.*—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved.

"Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

between the Boise Cascade survey markers and the point at which the 1967 survey placed Murphy's southern boundary.

After discovery of the discrepancy, Murphy took no action. She testified at trial that as far as she was concerned her south boundary was at the Flynn fence. She stated that she thought that since Flynn's fence had been there so long, he probably was now the owner of the overlap. The Flynn fence remained in its overlapping location, and was located there when Allisons purchased the Murphy parcel in 1969.

At trial, Murphy stated that she pointed out the Flynn fence to Allisons and told them that there was an overlap, but that she felt the fence was the boundary. She claims to have given Allisons a copy of the 1967 survey map, pointing out the differences but telling Allisons that she was only selling to the fence line. Murphy herself prepared the warranty deed, using the same property description as her own deed, but adding the words, "excepting approximately 60″ [inches] overlap on South side." She testified that she fully intended to except sixty feet from the deed, but she inadvertently typed sixty double prime (″) rather than sixty single prime (′).

■ Murphy's testimony was controverted by that of I. M. Allison, who stated that Murphy made no representations to him about the south boundary, and that he never saw the actual location of the Flynn fence when they viewed the property. He also stated that he did not see the survey map which showed the encroachment until a year later. He had no objection to the five foot (60″) exception contained in his deed, alleging that Murphy had informed him that she intended to except five feet. While the trial court did not specifically resolve this conflict, it did deny Murphy's request for reformation of the deed and its ruling is supported by the testimony of Allison and others which refuted Murphy's claim of mistake, and will not be disturbed on appeal. I.R.C.P. 52(a); *Hyde v. Lawson*, 94 Idaho 886, 499 P.2d 1242 (1972).

■ In their first assignment of error, defendant appellants Allisons contend that the trial court erred in its finding of fact number three, that Flynn had fulfilled the statutory requirement of payment of taxes on the fence-enclosed overlap strip, and in its conclusion of law number one, that pursuant to I.C. § 5–210 as construed in *Scott v. Gubler*, 95 Idaho 441, 511 P.2d 258 (1973), Flynn had perfected title to the disputed .27 acre by adverse possession. Appellants acknowledge that this Court has adopted a liberal construction of the payment of taxes requirement imposed by the statute, *Standall v. Teater*, 96 Idaho 152, 525 P.2d 347 (1974); *Scott v. Gubler, supra,* but urge that this case is distinguishable from those cases. Further liberalization of the payment of taxes requirement by this Court, appellants argue, would in effect remove that requirement entirely in boundary disputes, contrary to the language of the statute.

It is undisputed that Flynn has enclosed the overlap by the erection of a fence and has improved the area by planting a lawn and trees and installing a septic tank. It is further undisputed that Flynn had occupied and claimed the overlap for a period well in excess of five years. The sole question is whether Flynn has "paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

In *Scott v. Gubler, supra,* the relevant property was described by government lot number. The claimants had mistakenly enclosed some neighboring property when they set their fences, encroaching .5 acre on the adjacent lot. This Court affirmed the trial court's determination that since all taxes levied by the county assessor on their lot had been paid by the adverse claimants, and the tax assessment description did not indicate precisely what property was being assessed, such payment constituted payment of taxes on all the land actually being occupied by them as their government lot, including the disputed .5 acre.

In *Standall v. Teater, supra,* which also involved a boundary dispute, we ruled that where assessment of property was designated as "Tax 6, sec. 21, T. 6 R. 13" and the adverse claimants had paid all taxes on the property assessed to them, as a matter of law they had paid taxes on all of the land enclosed and occupied by them. To the same effect is *Calkins v. Kousouros,* 72 Idaho 150, 237 P.2d 1053 (1951), wherein the adverse claimant's property was assessed as "Tax No. 3" and the county assessor had testified that he presumed that the property under fence was the owner's property.

The above cited cases are all similar in one respect, in that it was impossible to tell from the tax assessment record the precise quantum of property being assessed, and thus we were able to hold that where the adverse claimants had paid all taxes on property assessed to them, they had paid taxes on the land adversely possessed. In contrast, the tax assessment sheets which were admitted into evidence in this case indicate that the property owner is taxed according to the amount of land owned, although that land is not precisely described. Flynn was apparently assessed separately on each of his 100 foot parcels, and the documents in evidence relate only to his northern 100 feet which border on the overlap strip in dispute. These assessment sheets describe that parcel as "Part NENW .50 acres Sec. 11." If Flynn had occupied the overlap strip in addition to the land he received under deed, it is obvious that he would be occupying more land than that for which he paid taxes.

Consequently, we could not apply the rationale we used in *Standall, Scott* and *Calkins* and hold that Flynn had constructively paid taxes on all land that he actually occupied.

The tax assessor for Adams County testified at the trial that property is assessed according to the amount of land given in the deed, and when he inspected the property, he did not survey it, but assumed that the land actually occupied and fenced conformed to the deed. In his testimony, Flynn stated that he claims only his 200 feet of river frontage, that he has always had only 200 feet fenced and he has never claimed more than the 200 feet that his deeds gave him. While this contention raises the obvious question of who claims some 60 feet immediately south of Flynn, no one at the trial of this case seemed concerned with this problem, and the record indicates that it is indeed a "no man's land" to which no one lays claim. The result is that Flynn claims and occupies the same amount of land that he was taxed upon. An analogous situation existed in *White v. Boydstun,* 91 Idaho 615, 428 P.2d 747 (1967), in which the adverse claimant had a deed for .98 acres but had occupied close to two acres and had paid taxes on two acres for a period in excess of five years. We affirmed the trial court finding that the adverse claimant had satisfied the payment of taxes requirement.

Boundary disputes are not uncommon in this state, as witnessed by the relative frequency with which this Court has wrestled with the problem,[2] and we realize that the adverse possessor faces an almost impossi-

2. The following are Idaho boundary dispute cases in which the payment of taxes requirement for adverse possession was at issue: *Gameson v. Remer,* 96 Idaho 789, 537 P.2d 631 (1975); *Standall v. Teater,* 96 Idaho 152, 525 P.2d 347 (1974); *Hook v. Horner,* 95 Idaho 657, 517 P.2d 554 (1973); *Scott v. Gubler,* 95 Idaho 441, 511 P.2d 258 (1973); *Hyde v. Lawson,* 94 Idaho 886, 499 P.2d 1242 (1972); *Lisher v. Krasselt,* 94 Idaho 513, 492 P.2d 52 (1972); *Fry v. Smith,* 91 Idaho 740, 430 P.2d 486 (1967); *White v. Boydstun,* 91 Idaho 615, 428 P.2d 747 (1967); *Hamilton v. Village of McCall,* 90 Idaho 253, 409 P.2d 393 (1965); *Dickerson v. Brewster,* 88 Idaho 330, 399 P.2d 407 (1965); *Eagen v. Colwell,* 86 Idaho 525, 388 P.2d 999 (1964); *Swanson v. State,* 83 Idaho 126, 358 P.2d 387 (1960); *Larson v. Lindsay,* 80 Idaho 242, 327 P.2d 775 (1958); *Beneficial Life Ins. Co. v. Wakamatsu,* 75 Idaho 232, 270 P.2d 830 (1954); *Edgeller v. Johnston,* 74 Idaho 359, 262 P.2d 1006 (1953); *Calkins v. Kousouros,* 72 Idaho 150, 237 P.2d 1053 (1951); *Mulder v. Stands,* 71 Idaho 22, 225 P.2d 463 (1950);

ble task in attempting to prove that he paid taxes on the land he claims when the facts show simply that he has mistakenly shifted his boundaries, as in this case, sixty feet into his neighbor's property. We hold that under these circumstances, in which the adverse claimant occupied the same amount of land as that for which he was assessed, and, further, the county property tax assessment sheet did not particularly describe the land being taxed, the requirement of I. C. § 5-210 that the adverse claimant has "paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law" has been satisfied.

■ In their alternative assignment of error, Allisons attack the district court's finding of fact number seven, which rejected their claim for damages resulting from Murphy's breach of warranty of title. Since Murphy failed in her prayer for reformation of the deed, and title to the overlap strip was quieted in Flynn, Allisons were entitled to relief on their counterclaim, as they have been deprived of some of the land which Murphy's warranty deed purports to convey to them. Under Idaho law, damages for breach of the warranty contained in a deed, rather than specific performance of the deed covenants, has been established as adequate compensation for the property lost and expenses incurred

in defending the title, including attorney fees; *Elliott v. Thompson*, 63 Idaho 395, 120 P.2d 1014 (1941); *Madden v. Caldwell Land Co.*, 16 Idaho 59, 100 P. 358 (1909). The trial court ruled that Allisons had not presented sufficient evidence of damages resulting from misdescription in the deed. However, in *Dykstra v. Dykstra*, 94 Idaho 797, 498 P.2d 1270 (1972), we held that where it is established that a claimant is entitled to reasonable attorney fees, no formal proof need be offered, but the trial judge, who is in a position to assess the complexity of the case, the time involved, the volume of pleadings and other necessary papers, etc., may make that determination.[3] Therefore, the failure of the trial court to grant Allisons reasonable attorney fees incurred in their defense of the property and in asserting their counterclaim for breach of warranty of title is error and this case must be reversed and remanded. On remand, Allisons shall also be allowed to present additional evidence of their damages from the loss of the disputed strip of property so that the court may determine the full extent of their damages.

Affirmed in part and reversed in part, and remanded to the trial court with directions. Costs to respondents.

McFADDEN, C. J., and DONALDSON and SHEPARD, JJ., and SCOGGIN, D. J., (Retired), concur.

---

*Balmer v. Pollak*, 67 Idaho 494, 186 P.2d 217 (1947); *Woll v. Costella*, 59 Idaho 569, 85 P.2d 679 (1938); *Erickson v. Winegar*, 41 Idaho 1, 236 P. 870 (1925); *Blayden v. Morris*, 37 Idaho 37, 214 P. 1039 (1923); *Craven v. Lesh*, 22 Idaho 463, 126 P. 774 (1912); *Brown v. Brown*, 18 Idaho 345, 110 P. 269 (1910); *Bayhouse v. Urquides*, 17 Idaho 286, 105 P. 1066 (1909).

3. In *Dykstra* we indicated that the trial court could take judicial notice of the minimum fee schedule of the Idaho State Bar in determining what constitutes reasonable attorney fees. The minimum fee schedule has since been abandoned by the State Bar and its use has been condemned as violative of the antitrust laws, *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed. 2d 572 (1975). We therefore specifically disapprove of reference to the minimum fee schedule by the trial court in assessing reasonable attorney fees. We do not, however, feel that this development will impair the court's ability to assess reasonable attorney fees based on the factors noted above.