633 P.2d 592

**Earl TRAPPETT and Dixie Trappett, husband and wife; and Elvina Ogborn, Plaintiffs-Appellants,**

v.

**Melvin C. DAVIS, Defendant-Respondent.**

**No. 13177.**

Supreme Court of Idaho.

Sept. 8, 1981.

Dean Williams, Blackfoot, for plaintiffs-appellants.

Stephen J. Blaser, Blackfoot, for defendant-respondent.

BAKES, Chief Justice.

This is an adverse possession case. The plaintiff appellants, Earl Trappett, Dixie Trappett and Elvina Ogborn, appeal from a judgment awarding them part, but not all, of a piece of property which they claim by adverse possession.

Decades ago, a plat of "Younie's First Addition," located in Blackfoot, Idaho, was filed. The plat included Lot 32, which contains the property now in dispute. As platted, the northern 25 feet of Lot 32 was reserved for a roadway; nothing was reserved on the southern edge. However, at some point in time, there came into being a road, McAdoo Street, which is centered on the southern boundary of Lot 32.

In 1946, the Ogborns purchased a parcel of property in Lot 32. The Ogborns' deed describes the property (by metes and bounds) as a 290′ × 110′ rectangle in the southwest corner of Lot 32. Again, no reservation was made for a roadway on the southern border.

In 1975, the Trappetts acquired the property adjacent to the Ogborn property. The Trappetts' deed describes the property (by metes and bounds) as a 290′ × 109′ rectangle. The Trappetts' deed was subject to a reservation of a 25 foot strip on its southern boundary for a public highway, namely, McAdoo Street. The Trappetts' predecessor, Roland Baird, had owned the property from 1961 to 1975.

Since 1946, and probably earlier, there has existed a fence (operational, though in various states of disrepair) to the north of the Ogborns' and Trappetts' *legal* boundary. The property in dispute lies between the fence line and the legal boundary. It is a four-sided parcel measuring approximately 47.4′ × 159′ × 30.5′ × 158.3′.

Baird, Trappett and Ogborn testified that they had put the disputed area to use for many years—Baird and Trappett for pasture, and Ogborn for gardening. Mrs. Ogborn stated that sometime prior to 1968 the ground was sterilized for purposes of weed control. Since that time, she has kept that portion of the disputed property plowed.

In 1968, Davis acquired the parcel of property immediately to the north of the Ogborn and Trappett properties. Davis bought it at a tax sale. The alleged boundary fence ran at an angle through Davis's property. Davis testified that shortly after the tax sale, he informed both Ogborn and Baird that he was the new owner of the property to the north and that his boundary was in fact to the south of the fence line. Davis contends that he consented to his southern neighbors' use of the disputed property. Ogborn and Baird did not recall any conversation with Davis wherein he informed them of the true legal boundary. Ogborn, Baird and Trappett all testified that they felt that their property went all the way to the fence line.

Since 1968, Davis, the Trappetts, their predecessor Baird, and Ogborn have all paid the taxes on their respective pieces of property. The county assessor testified that the assessments were based on the metes and bounds description found in the records of the county assessor and treasurer. The assessor did not consider fence lines in appraising the parties' properties. The county assessor's office gives each parcel of property a tax number, e. g., T–2201, which represents the metes and bounds description of the property. However, the tax notices sent out by the county treasurer do not contain a metes and bounds description, but refer only to the property's tax number.

The assessor's records include a plat of Lot 32 which designates individual parcels by tax number. According to a surveyor hired by Davis, the assessor's plat is in error. The plat depicts the northernmost edge of McAdoo Street as the southern boundary of the Ogborn and Trappett properties. The surveyor testified, and the trial court found, that the center line of McAdoo Street was the actual southern boundary. Thus, the assessor's office platted the entire Trappett and Ogborn parcels 25 feet to the north of their actual legal location.

In the spring of 1978, Trappett plowed the area just south of the fence line. In response, Davis hired the surveyor, who determined the location of the legal boundary. Davis then dismantled the old fence and began to construct a new one along the legal boundary. Ogborn and the Trappetts then commenced this quiet title suit, claiming title by adverse possession. They requested actual and punitive damages and attorney fees. Davis answered and counterclaimed, asserting paramount legal title to the property in question.

Trial was conducted before the court. In a memorandum decision, the court determined that the 1968 tax sale gave Davis an absolute, unencumbered title to the property described in his deed, including the property in dispute. Under the court's ruling, evidence of adverse possession prior to 1968 was technically irrelevant, the tax deed having commenced a new chain of title. However, the court found that the evidence clearly and convincingly established that the elements of adverse possession had been met since 1968, with one exception, the tax requirement of I.C. § 5–210, which requires that the person claiming title by adverse possession must have paid all taxes levied and assessed on the disputed property.

The district court analyzed the tax problem in the following manner. The county tax plat erroneously showed the edge of McAdoo Street as the southern border of the Ogborn and Trappett properties. This caused the county to tax the properties based on their full 290 foot length. Land included in public highways, the 25 feet in McAdoo Street, is not subject to assessment for taxation. I.C. § 63–108. Thus, Ogborn, the Trappetts, and their predecessors were paying taxes on an extra 25 foot strip. Because the county tax plat erroneously showed that the Ogborn and Trappett tracts were situated 25 feet north of their actual metes and bounds descriptions, the court concluded that the county was receiving an illegal double tax, i. e., that both Davis and Ogborn/Trappett were paying taxes on the southern 25 feet of Davis's property. Accordingly, the district court awarded Ogborn and Trappett only the southern 25 feet of Davis's property and denied their claim to all of the property south of the fence.

Since the court concluded that the fence line was wholly contained in Davis's property, the court awarded no damages for its destruction. The court also held that Davis's trespass on the 25 foot strip of land was a technical violation which caused no actual damage.

Ogborn and Trappett appeal, insisting that they should have gotten all of the land south of the fence. Davis cross appeals, insisting that they should have received none of the disputed property. The primary question presented by this appeal concerns the district court's analysis of the tax payment requirement in adverse possession cases.

■ The trial court found that Ogborn and the Trappetts met their burden of proof on the non-tax elements of adverse possession. Our review of the record convinces us that this finding is supported by substantial and competent evidence and must be sustained on appeal. The tax requirement poses a more difficult issue, however.

This Court frequently "wrestles" with property disputes involving the tax payment requirement. *Flynn v. Allison*, 97 Idaho 618, 621, 549 P.2d 1065, 1068 (1976). Decades of judicial gloss have steadily chipped away at a literal application of the tax requirement. A good deal of that judicial gloss has evolved mechanically and without benefit of supporting rationale, a criticism which might well be leveled at the tax payment requirement itself. In any event, given the state of case law, it may be better to commence our analysis by stating the obvious rule and then attempting to list the exceptions and qualifications to that rule.

■ In the general case (which is by no means the most typical case), I.C. § 5–210 requires *actual* payment of taxes which are assessed to the disputed property. *Fry v. Smith*, 91 Idaho 740, 430 P.2d 486 (1967); *White v. Boydstun*, 91 Idaho 615, 428 P.2d 747 (1967); *Larsen v. Lindsay*, 80 Idaho 242, 327 P.2d 775 (1958); *Balmer v. Pollak*, 67 Idaho 494, 186 P.2d 217 (1947). Of critical importance is the assessor's actual basis for valuation of the property in question, i. e., whether his assessment was based on estimated acreage derived from physical inspection, value based on frontage feet, area calculated from a metes and bounds description, or some other method of valuation. The general tax rule focuses on actual payment as evidenced by the assessor's actual valuation. However, this Court has

fashioned several corollaries and exceptions to the general rule which, when applied, have the effect of satisfying the tax requirement (by fiction or otherwise), even though it cannot be determined that the adverse claimant actually paid property tax on the disputed land.

■ The first and most frequent example is the "lot number" corollary.

"[I]n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, and *taxes are assessed by lot number or by government survey designation, rather than by metes and bounds description*, payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the . . . statute." *Scott v. Gubler*, 95 Idaho 441, 443–44, 511 P.2d 258, 260–61 (1973) (emphasis added, footnote omitted).

The following cases apply the lot number corollary in one form or another: *Nesbitt v. Wolfkiel*, 100 Idaho 396, 598 P.2d 1046 (1979); *Standall v. Teater*, 96 Idaho 152, 525 P.2d 347 (1974); *Scott v. Gubler, supra; Beneficial Life Ins. Co. v. Wakamatsu*, 75 Idaho 232, 270 P.2d 830 (1954); *Calkins v. Kousouros*, 72 Idaho 150, 237 P.2d 1053 (1951); *Bayhouse v. Urquides*, 17 Idaho 286, 105 P. 1066 (1909). The primary reason behind the lot number corollary is as follows: when taxes are assessed according to some generic description, "it [is] impossible to determine from the tax assessment record the precise quantum of property being assessed . . . ." *Flynn v. Allison*, 97 Idaho at 621, 549 P.2d at 1068. In the instant case, the properties of all parties involved were assessed on the basis of metes and bounds descriptions found in the respective deeds. Hence, Ogborn and the Trappetts cannot take advantage of the lot number corollary.

■ The tax payment requirement is also deemed satisfied if, during the five year period of adverse occupation, no taxes are assessed or levied on the disputed parcel. *White v. Boydstun, supra; Hogan v. Blak-*

*ney*, 73 Idaho 274, 251 P.2d 209 (1952); *Swank v. Sweetwater Irr. & Power Co., Ltd.*, 15 Idaho 353, 98 P. 297 (1908). That corollary, too, is inapplicable here.

■ A third exception is not really an exception at all, but rather a different rule, having as its source a different doctrine. Idaho has recognized the doctrine of agreed boundary or boundary by acquiescence.

"Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds . . . and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties." *Downing v. Boehringer*, 82 Idaho 52, 56, 349 P.2d 306, 308 (1960) (citations omitted).

*See Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1980); *Fry v. Smith, supra; Edgeller v. Johnston*, 74 Idaho 359, 262 P.2d 1006 (1953); *Kesler v. Ellis*, 47 Idaho 740, 278 P. 366 (1929); *O'Malley v. Jones*, 46 Idaho 137, 266 P. 797 (1928); *Meyer v. Schoeffler*, 39 Idaho 500, 227 P. 1061 (1924). As numerous cases implicitly or explicitly recognize, adverse possession and agreed boundary are distinct theories. *See Lisher v. Krasselt*, 94 Idaho 513, 492 P.2d 52 (1972); *Fry v. Smith, supra; O'Malley v. Jones, supra; Meyer v. Schoeffler, supra; Ernie v. Trinity Lutheran Church*, 51 Cal.2d 702, 336 P.2d 525 (1959); *Moore v. Bayless*, 215 Kan. 297, 524 P.2d 721 (1974); *Townsend v.*

*Koukol,* 148 Mont. 1, 416 P.2d 532 (1966); *Lamm v. McTighe,* 72 Wash.2d 587, 434 P.2d 565 (1967). *See also* Comment, Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism, 9 Santa Clara Law. 244 (1969); Note, Boundaries by Agreement and Acquiescence in Utah, 1975 Utah L.Rev. 221 (1975). Although the doctrines are distinct, they have had some common attributes. For example, in *Kesler v. Ellis, supra,* this Court borrowed the statutory period from adverse possession theory and applied it to agreed boundary cases, holding that "it is but logical to say that such acquiescence must continue for a period of not less than five years, thus conforming to the period established by the statute of limitations in cases of adverse possession." *Kesler v. Ellis,* 47 Idaho at 744, 278 P. at 367. Subsequently, however, in *Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954), this Court abandoned the five-year requirement for acquiescence, holding that the period of acquiescence "is merely regarded as competent evidence of the agreement . . . ." *Id.* at 117, 268 P.2d at 353.

■ Although payment of property taxes is required in adverse possession cases, there is, as a practical matter, no tax requirement in agreed boundary cases. *See*

*O'Malley v. Jones, supra; Ernie v. Trinity Lutheran Church, supra; King v. Fronk,* 14 Utah 2d 135, 378 P.2d 893 (1963). Although some Idaho cases seem to assume that the tax requirement is applicable, the requirement is always satisfied by application of the following fiction:

"Both parties, it must be conceded, have paid all taxes and assessments levied and assessed upon the lands as conveyed to them in their respective instruments of conveyance. However a finding, supported by substantial competent evidence, of an agreed boundary line has the effect of extending or diminishing the limits of the respective deeds to include and exclude the parcel of land in dispute; under such circumstances the payment of taxes and assessments in this manner is a payment on the land in possession of the respective parties and, hence, satisfies the requirements of the statute which requires the payment of taxes to perfect title by adverse possession." *Edgeller v. Johnston,* 74 Idaho at 366, 262 P.2d at 1010–11.

*See Eagan v. Colwell,* 86 Idaho 525, 388 P.2d 999 (1964); *O'Malley v. Jones, supra.*[1] Hence, in effect, there is no tax requirement in agreed boundary cases.[2] In the

1. Montana has taken a similar approach to this question, paying lip service to a fictional tax requirement in agreed boundary cases.

"We have held that, where the evidence shows that taxes have been paid on the basis of the land description in the deed which does not include the strip of property in dispute, in absence of an agreement extending the boundary to include this strip, such payment does not constitute payment of the taxes on the disputed strip. . . . However, where a boundary line has been agreed upon or fixed because of the uncertainty of the parties as to the true boundary and the deed description does not include the disputed land, the payment of taxes according to the deed description does constitute a payment upon such land for the purpose of satisfying the statute." *Nott v. Booke,* 598 P.2d 1137, 1139 (Mont.1979) (citations omitted).

2. Some prior cases may have blurred, if not obliterated, the distinction between the doctrines of agreed boundary and adverse possession. *See, e. g., Hyde v. Lawson,* 94 Idaho 886, 499 P.2d 1242 (1972), overruled on other grounds, *Nesbitt v. Wolfkiel,* 100 Idaho 396,

399, 598 P.2d 1046, 1049 (1979). This distinction is of critical importance, of course, especially considering the fact that there exists no real tax requirement in agreed boundary cases.

The confusion which results when the two doctrines are not distinguished is evidenced in the case of *White v. Boydstun,* 91 Idaho 615, 428 P.2d 747 (1967). In *White,* the Court stated,

"[I]t should be noted that in the analogous situation concerning adverse occupation of land next to the boundary line between the property of the adverse claimant and his opponent, continuous adverse occupation will extend a true boundary line beyond the occupier's express deed limits, so that payment of taxes assessed on the deeded property is deemed payment of taxes on the lands in the claimant's possession." *Id.* at 622, 429 P.2d at 754.

The above language would extend the agreed boundary tax exception to any adverse possession contest between contiguous landowners. In support of that broad proposition, the Court cited two lot number cases and two agreed boundary cases, all four of which were based

case at hand, Ogborn and the Trappetts have throughout this controversy relied solely on the doctrine of adverse possession,[3] although their brief does contain citations to several agreed boundary cases.

A fourth corollary to the general tax rule has surfaced in two recent cases, *Flynn v. Allison, supra,* and *White v. Boydstun, supra.* In both cases, the adverse claimant occupied and claimed the same amount of land upon which he was taxed. In *White,* the adverse claimant was taxed on a two-acre tract, the amount claimed, even though his deed and the tax assessment records reflected that his record holdings were closer to one acre. In *Flynn,* the adverse claimant was taxed upon a parcel with two hundred feet of river frontage. He claimed only two hundred feet, sixty feet of which belonged to the record owner. Analogizing to *White,* we held that the tax requirement was satisfied.

■ We think that the *White/Flynn* rule is applicable here. The adverse claimants were taxed on a 290-foot strip of property, the length of the property described in their deeds. The assessor testified that he assessed the Ogborn and Trappett properties as if they were bounded on the south by the edge of McAdoo Street, when in fact they were bounded by the center of McAdoo Street. Property used as part of a public highway is exempt from taxation. I.C. § 63–108. Ogborn and the Trappetts have therefore satisfied the tax requirement on

the 25-foot strip of land immediately to the north of their legal northern boundary. In that respect, we affirm the trial court's finding. Conversely, since Ogborn and the Trappetts were taxed only on a 290-foot strip of property, we affirm the trial court's finding that they have not satisfied the tax requirement on all of the disputed property south of the alleged boundary fence.

Our analysis cannot end there, however. Davis points out that he, too, paid taxes on all of the disputed property during the period of alleged adverse possession. Davis argues that, even assuming that the adverse claimants have met the tax requirement of I.C. § 5–210, if the record owner has also paid taxes during the period of adverse possession, then the record owner should prevail. This issue has produced a split of authority among state courts. *See* Annot., 132 A.L.R. 216, 238 (1941). *Compare Nicholas v. Giles,* 102 Ariz. 130, 426 P.2d 398 (1967), *Cavanaugh v. Jackson,* 99 Cal. 672, 34 P. 509 (1893), *C & F Realty Corp. v. Mershon,* 81 N.M. 169, 464 P.2d 899 (1969), and *Zubieta v. Tarner,* 76 Nev. 243, 351 P.2d 982 (1960), *with Christensen v. Munster,* 1 Utah 2d 335, 266 P.2d 756 (1954), *Gray's Harbor Commercial Co. v. McCulloch,* 113 Wash. 203, 193 P. 709 (1920), and *Erickson v. Wick,* 22 Wash.App. 433, 591 P.2d 804 (1979). The Idaho Supreme Court has never specifically confronted and resolved this issue. *But cf., Cramer v. Walker,* 23 Idaho 495, 130 P. 1002 (1913) (indicating approval, in *dictum,* for a preference espoused by a

on narrower qualifications to the general tax requirement. Moreover the *White* Court's broad pronouncement was unnecessary to the resolution of the case. The adverse claimant in *White* had actually paid taxes upon the two acres claimed, even though his deed and county tax records showed that his record holdings approximated one acre.

The suspect *White dicta* was subsequently picked up in both *Standall v. Teater,* 96 Idaho 152, 525 P.2d 347 (1974), and *Hyde v. Lawson, supra. Standall* was basically a lot number case, and the *Hyde* decision was based on an agreed boundary, even though *Hyde* failed to make any distinction at all between the doctrines of agreed boundary and adverse possession. Since application of the *White dicta* would eliminate the tax requirement in virtually every adverse possession case, it is hereby

disapproved. We decline to eradicate a statutory requirement without any discernible guidance from the legislature.

3. The trial court found that the fence line constituted an agreed boundary from 1946 to 1968. The court concluded, however, that the 1968 county tax deed created a new chain of title on Davis's behalf. *See* I.C. § 63–1139 (tax deed conveys absolute title free of all encumbrances except certain mortgages); I.C. § 63–1143 (tax deed contest barred six years after issuance of deed). The plaintiffs have relied only on the doctrine of adverse possession to support their post-1968 property claim. Indeed, the record indicates that the plaintiffs would be hard pressed to show that Davis agreed, explicitly or implicitly, to the fence as a boundary after 1968.

**534**

California Supreme Court justice in his concurring opinion in *Cavanaugh v. Jackson, supra* ).

The resolution of this conflict depends primarily on what is perceived as the primary purpose of the tax requirement. Three different rationales are often given: (1) to require further evidence of good faith and intent on the part of the adverse occupant; (2) to give further notice to the record owner of the existence of the adverse claim and of the time it would mature into title; and (3) to insure that the taxing authority will receive its property tax. Comment, Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism, 9 Santa Clara Law. 244 (1969). The latter purpose is of no import here, the taxing authority having received twice its due.

Those courts which favor the good faith rationale generally hold for the adverse claimant in cases of double taxation. *E. g., C & F Realty Corp. v. Mershon, supra.* Under that approach, the court's inquiry is focused on the conduct of the adverse claimant. Those courts which favor the notice rationale are more likely to hold in favor of the record owner. *E. g., Bowen v. Olson*, 2 Utah 2d 12, 268 P.2d 983 (1954); *Christensen v. Munster, supra.* This approach focuses upon the conduct of the record owner.

 Today, we hold that when both the record owner and the adverse occupant have paid taxes on the subject parcel during the alleged period of adverse possession, the adverse occupant prevails. The doctrine of adverse possession focuses primarily on the conduct and actions of the adverse claimant. *See Lisher v. Krasselt*, 94 Idaho 513, 517, 492 P.2d 52, 56 (1972). The doctrine operates in favor of an adverse occupant who takes affirmative steps to perfect a latent property interest. Our decision is also consistent with prior Idaho cases applying the tax requirement. *Cf. Scott v. Gubler*, 95 Idaho at 445, 511 P.2d at 262 (questioning notice rationale). For example, the lot number exception works in favor of an adverse claimant, even though payment of taxes according to lot number designation would not serve to notify the record owner of any extant adverse claims. To that extent, our prior lot number cases placed greater importance on the good faith rationale than on the notice rationale.

Ogborn and the Trappetts are therefore entitled to the southern 25 feet of the claimed property, even . though Davis has also paid taxes upon such parcel. The trial court's division of the disputed property is affirmed in its entirety.

Finally, Ogborn and the Trappetts contend that the court erred in denying their request for both actual and punitive damages. We have reviewed the record and find no error, especially in view of the fact that, under today's decision as well as the decision of the court below, the fence which Davis tore down was situated entirely upon his property.

The judgment of the district court is affirmed. No costs allowed.

BISTLINE, DONALDSON and SHEPARD, JJ., concur.

McFADDEN, J., dissents without opinion.