James L. MOUNT and Helen R. Mount, husband and wife, Appellants,

v.

Mary Jane CURRAN, individually and as executrix for the Estate of Thomas E. Curran, Jr., and The Parrish Company, a partnership, Appellees.

No. 4872.

Supreme Court of Alaska.

Dec. 30, 1982.

See also, Alaska, 657 P.2d 389.

1961) (dedication of a public way); *Roberts v. Jaeger*, 5 Alaska 190, 192–93 (D.Alaska 1914)

(prescriptive easement).

Before RABINOWITZ, C.J., BURKE, J., and Chief Judge BRYNER and Judge SINGLETON, Court of Appeals Judges.*

## OPINION ON REHEARING

RABINOWITZ, Chief Justice.

This is an appeal from a grant of partial summary judgment regarding a claim of adverse possession.

An action of quiet title to a tract of land in Fairbanks was brought by Mary Jane Curran, Thomas E. Curran, Jr., and the Parrish Company, their successors in interest. Curran alleged that the Parrish Company was the record title holder and owner in fee simple of Lots 6, 7A, and 7B, Block 95, of the Fairbanks townsite, as laid out in the survey known as the Robe Map of 1909.[1]

James and Helen Mount, owners of Lot 8 (an adjacent lot), answered that portions of these lots (6, 7A, and 7B) were theirs by right of adverse possession. The claim was based on the Mounts' occupancy of the disputed portions since 1973, and occupancy before that time by their predecessor in interest, Simeon Bulavski, who owned the property from 1936 to 1973. The 1973 conveyance of Lot 8 to the Mounts from Simeon Bulavski described Lot 8 by metes and bounds, and this description results in an overlap with Lots 6, 7A and 7B as claimed by Curran and described in the Robe Map.[2]

Parrish Company moved for partial summary judgment on its claim as to ownership of Lot 7A. The history of that particular portion differs from that of Lots 6 and 7B in that 7A was acquired from its then-record owner, one Harry Bisoff, by the City of Fairbanks on February 2, 1962, following foreclosure on a tax lien. The City held the property until 1973 when it sold Lot 7A to

Clem H. Stephenson, Fairbanks, for appellants.

Julian L. Mason, Baily & Mason, Anchorage, for appellees.

* Bryner and Singleton, Chief Judge and Judge of the Court of Appeals, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The parties apparently have located no copies of the original Robe Map itself. The Map was reproduced by Karl Theile, United States Surveyor General, in 1922.

2. The dispute seems to be grounded in an ancient discrepancy between the 1909 survey and the boundaries as recognized and utilized by the occupants, shown by fences on the lots. It was apparently this same discrepancy which led to the litigation in *Ringstad v. Grannis,* 159 F.2d 289 (9th Cir.1947), *appeal after remand,* 171 F.2d 170 (9th Cir.1948). However, as Curran points out, that case is of no relevance to the specific question here presented.

the partnership of "Curran and Hodges."[3] Parrish Company's basis for summary judgment was that, even conceding actual occupancy of the disputed portions by the Mounts and their predecessor in interest (Bulavski) since 1936, the intervention of the tax foreclosure would defeat the adverse possession claim.[4]

Following argument and briefing, the superior court ruled that, as a matter of law, the Mounts had no claim to Lot 7A.[5] The Mounts moved to set aside the partial summary judgment, submitting various materials in support of the motion. The superior court denied the motion, and this appeal by the Mounts followed.

In our initial opinion, the appeal was disposed of by resolving the question of whether the City, by its foreclosure on Bisoff's land, could obtain that interest in the disputed portions which Bisoff allegedly had already lost by adverse possession to Bulavski.[6] In their petition for rehearing, appellees argued that the issue upon which we disposed of the appeal was neither raised at trial, listed on the points on appeal, nor briefed to this court.[7] We are persuaded by appellees' arguments and have concluded that the opinion previously issued in this case must be withdrawn and disapproved, since it was grounded upon an issue that was not briefed in this court nor raised in the superior court.[8] In light of the foregoing conclusion, it is now incumbent upon us to address the specifications of error originally advanced by the Mounts which we did not reach in our first opinion.

The Mounts' first assertion of error is that the superior court incorrectly held that "for tax purposes Lot 7A extended west of the established fence lines between Lots 7 and 8 of Block 95 of the original Town of Fairbanks, Alaska." More specifically, the Mounts contend that the 1909 Robe map, reproduced by Thiele in 1922, showed a boundary which was different from the property lines which had been settled upon by the actual occupants of the land as shown by the fence the occupants had erected. The Mounts further argued that the city's tax deed "actually conveyed the premises within the true boundaries of . . . Lot 7(A) instead of the boundaries shown on the 1922 map."[9]

■ We reject the Mounts' contention that the tax deed conveyed the property according to the fence lines rather than the recorded map. The tax deed recited that it applied to "Lot 7A, Block 95, Fairbanks Townsite." The Mounts do not contend that this conveyance did not refer to the

3. From Curran and Hodges, the property passed into the Estate of Thomas E. Curran, Jr., of which Mary Curran is the executrix. The property subsequently was sold to the Parrish Co.

4. At the time of foreclosure, former § 16–1–125r, ACLA 1958, read:

Title of city. When a city acquires real property under foreclosure procedures, the conveyance vests in the city title to the property, free from all liens and encumbrances except unpaid taxes and assessments duly levied for local improvements to the property, and liens of the United States and the Territory.

In 1963, this provision was replaced by former AS 29.10.531, which contained only minor changes not relevant here.

5. The trial judge ordered that final judgment be entered as to Lot 7A, pursuant to Civil Rule 54(b). The dispute as to the remaining lots apparently was resolved in favor of the Mounts following trial.

6. Our disposition of this question in the initial opinion made it unnecessary for this court to address the other points on appeal which had been advanced by the Mounts.

7. Appellees further asserted that "[i]t was conceded [by the parties] throughout the proceeding that a tax foreclosure forecloses 'all claims of all people.'"

8. See Jeffries v. Glacier State Tel. Co., 604 P.2d 4, 11 (Alaska 1979); Saxton v. Splettstoezer, 557 P.2d 1126, 1127 (Alaska 1977); Appellate Rule 210(e).

9. In other words, the Mounts are arguing that the relevant tax assessment should be deemed to have been made on the property based on the boundaries as actually occupied by the owners, rather than as described in the land records.

recorded townsite map;[10] they simply claim that the map does not reflect the existing property lines. This argument, assuming its validity, does not invalidate the conveyance in the tax deed.[11] Here the city properly taxed and foreclosed on the record title holder and his recorded interest in land.[12] Absent a showing by the Mounts that the initial tax deed did not refer to the recorded townsite map, their claim of error in the map is irrelevant. The map accurately reflected the record title holder.

In their second specification of error, the Mounts argue that the superior court committed reversible error "in holding that the Mounts and their predecessors in title did not obtain title to the disputed triangular portion of Lot 7A that extended to the west of the division fences between Lots 7 and 8 by adverse possession," subsequent to the issuance in 1962 of the tax deed to the city.[13]

▮ We cannot accept the Mounts' argument that their predecessor in interest reac-

quired title from the city by adverse possession. The Mounts concede that under current law they could not adversely possess against the city. See AS 29.73.030.[14] The general rule in other jurisdictions is that public property is not alienable through adverse possession. Many states, however, except from this general rule land of a municipality not held for a public purpose.[15] In our view, this exception reflects the "governmental-proprietary functions" distinction which we have refused to adopt in the context of governmental tort liability.[16] Further, we have no reason to think that the legislature, in enacting AS 29.73.030, believed it was changing the existing common law of the state.[17] Assuming, without deciding, that land held under a tax deed is not held for a public purpose, and that the Mounts would be entitled to assert their predecessor's adverse possession against the Currans, we conclude that the Mounts' predecessor in interest did not adversely possess as against the City of Fairbanks.

**10.** Evidence submitted at trial, but not at summary judgment, indicates that Lot 7A of Block 95, for tax purposes, does not correspond to existing fence lines, but that it does correspond to the recorded townsite map. See note 5, supra.

**11.** The cases cited by the Mounts involve disputes between the record holder and an adverse possessor who has in fact paid taxes. They establish that under a statutory scheme requiring an adverse possessor to pay taxes annually on a claimed tract, payment of taxes assessed on an adjacent lot constitutes payment on all land actually being occupied as part of the assessed lot. See Standall v. Teater, 96 Idaho 152, 525 P.2d 347, 351–52 (1974); Scott v. Gubler, 95 Idaho 441, 511 P.2d 258, 260–61 (1973); Raney v. Merritt, 73 Cal.App. 244, 238 P. 767, 769–70 (1925). None of the cases state that the payment of taxes on an adjacent lot is effective to defeat a tax foreclosure. Even if it were, the argument would have to be raised in a timely manner, not, as here, after the time for challenging the tax foreclosure has passed.

**12.** See §§ 16–1–112b, 16–1–112c, ACLA 1958.

**13.** In their brief in support of this specification of error, the Mounts argue, in part, as follows:
If, for the sake of argument, the boundary lines between Lots 7 and 8 were those established by the unofficial, unrecorded, 1922 reproduction of the L.S. Robe map of 1909, said

disputed segment of Lot 7A became the property of Simeon Bulavski because he had open, notorious, hostile, adverse possession of said disputed segment for more than 10 years after the tax deed was issued to the City of Fairbanks.

**14.** AS 29.73.030 reads as follows:
A home rule or general law municipality may not be divested of title to real property by adverse possession.

**15.** See generally Annot., 55 A.L.R.2d 554 (1957).

**16.** City of Fairbanks v. Schaible, 375 P.2d 201, 208–09, 211 (Alaska 1962). See also University of Alaska v. National Aircraft Leasing Ltd., 536 P.2d 121, 128 (Alaska 1975); Libby v. City of Dillingham, 612 P.2d 33 (Alaska 1980).

**17.** A procedural requirement of voter ratification of municipal land sales was amended in 1951 to include all land, eliminating an earlier exception for land not held for any public use. We take this as an indication that in the legislature's judgment all municipal land should be treated alike. See § 16–1–35 Twentieth, ACLA 1949, amended by § 1, ch. 61, SLA 1951. The committee report accompanying the bill enacting AS 29.73.030 does not indicate that it was intended to effectuate any significant substantive change in existing law. See 1972 Senate Journal, Supp. 3, 1–11.

In their third specification of error, the Mounts contend that the superior court erred in failing to hold that Harry Bisoff, the former owner of Lot 7A, redeemed the lot by payment of the taxes.[18] Assuming the alleged payment was made, it came too late to redeem under the applicable statute.[19] But the then-record owner's payment of all taxes did entitle him to reconveyance under state law.[20] According to the Mounts' evidence, a repurchase payment was made on two separate occasions, and the city refused to return the property because the buildings on the lot did not comply with the local building code. The city's refusal to resell was authorized by local ordinance.

Assuming that all of this information was properly before the court, we find that the city's legal title remained sufficient to defeat any equitable rights [21] of the Mounts' predecessor, whether in the nature of adverse possession or of a defective repurchase. *Cf. Wells v. Noey*, 380 P.2d 876, 878 (Alaska 1963) (owner's right of redemption delayed beginning of adverse possession until redemption period expired).

Even if it did not, the subsequent sale to the Currans cut off the unrecorded equitable rights of the Mounts' predecessor. *See, e.g., Whitehead v. Foxhill*, 105 F.Supp. 966, 967 (D.Alaska 1952).

AFFIRMED.**

CONNOR, MATTHEWS and COMPTON, JJ., not participating.

---

18. The Mounts further argue that as a result of Bisoff's timely redemption the City had no interest in the subject land at the time it purportedly sold the property to the Currans.

19. Section 16–1–125q, ACLA 1958, provided:
    Upon filing proof of publication of notice of expiration of redemption period as a part of the foreclosure proceedings, the properties not redeemed within the one year period prescribed herein shall be deeded to the city by the clerk of court. All rights of redemption, with respect to the real properties therein described, shall terminate on the execution of the deed to the city. No return or confirmation of the sale or deed to the city is required or necessary.

20. See § 16–1–125q(a), ACLA 1959, which provides:
    *Repurchase by record owner or assigns.* The record owner at the time of tax foreclosure of any property acquired by a municipal corporation, independent school district, public utility district or other local governmental unit for delinquent taxes, or his assigns, may at any time prior to any sale or contract of sale of such tax foreclosed property by such local governmental unit, be entitled to repurchase such property, and such property shall be resold by such governmental unit to such former record owner or his assigns, for the

full amount applicable to the property under the judgment and decree, with interest thereon at the rate of eight percent (8%) per annum from the date of entry of the judgment and decree of foreclosure to the date of repurchase; together with any delinquent taxes assessed and levied as though it had continued in private ownership.

Provided further, however, that no such right of repurchase shall attach to any property subsequent to termination of the redemption period which is held by such municipal corporation, independent school district, public utility district or other local governmental unit for and devoted to any public purpose, authorized by law, and upon which improvements have been constructed pursuant to such public purpose.

21. We have previously characterized equitable title as the right to demand a conveyance. *See Fikes v. First Fed. Sav. & Loan Ass'n of Anchorage*, 533 P.2d 251, 258 (Alaska 1975). Arguably, payment of the repurchase price gave rise to such a right in the Mounts' predecessor under state law, despite the municipal ordinance to the contrary.

** Our previous opinion in this case, 631 P.2d 496 (Alaska 1981) is vacated.