103 P.3d 474

Dennis W. WILSON, Plaintiff–Counterdefendant–Respondent,

v.

Gerald A. GLADISH, Jr., an unmarried man, Jeffrey Gladish and Debbie Gladish, aka Deborah Gladish, husband and wife, Scott J. Gladish and Cheryl A. Gladish, Defendants–Counterclaimants–Appellants.

No. 28937.

Court of Appeals of Idaho.

July 14, 2004.

Rehearing Denied Nov. 4, 2004.

Review Denied Jan. 4, 2005.

Richard W. Kochansky, Coeur d'Alene, for appellant.

John J. Rose Jr., Kellogg, for respondents.

GUTIERREZ, Judge.

Dennis W. Wilson (Wilson) filed an action to quiet title to certain real property as against Gerald A. Gladish, Jr., Jeffrey Gladish and Debbie Gladish, husband and wife, Scott J. Gladish and Cheryl A. Gladish (collectively, Gladish). After a bench trial, the district court found in favor of and quieted title in Wilson. For the reasons set forth below, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In January, 1985, Gerald Gladish, Sr., and Betty V. Gladish, husband and wife, conveyed by quitclaim deed to Gladish certain real property (the Gladish property) located in Shoshone County, Idaho. The Shoshone County Assessor's Office designated the Gladish property as # 4975 for taxing purposes. In September, 1991, Norman Dow and Angelina Dow conveyed by warranty deed to Dennis Wilson certain real property (the Wilson property), also in Shoshone County, Idaho. The Shoshone County Assessor's Office designated this parcel as # 5000 for assessment purposes. The Gladish property and the Wilson property as deeded share a boundary on one side.

Wilson never occupied the property which was deeded to him. At the time Wilson purchased this property, his grantor and a neighbor pointed out to Wilson certain landmarks which they said marked the property boundaries. Based on this viewing, Wilson undertook to occupy an "island" (the disputed property) within the greater Gladish property. This disputed property was of about the same dimensions as the parcel actually described in Wilson's deed but unbeknownst to Wilson, it lay about 38 feet north of the deeded land. Prior to occupying this land, Wilson was required to bring the disputed property above the flood plain, and he brought 120 cubic yards of fill onto the land to accomplish this. Wilson tore down buildings which were on the disputed property, moved a mobile home onto the property, and extended a water line to serve the home. In 2001, a dispute arose concerning these properties. Wilson had sold his property on a land contract, but Gladish asserted that the disputed property was actually part of the Gladish property. According to Wilson's testimony, his buyer abandoned interest in the land sale contract because of this conflict. Gladish hired a surveyor to survey the property boundaries based on the legal descriptions in the deeds. Wilson hired a surveyor to create a metes and bounds description based on the monuments he had been shown when he purchased the property. The description established by Wilson's survey conflicted with the description contained in his deed. As a result, Wilson filed an action to quiet title to the disputed property, as described by the Wilson survey under a claim of adverse possession.

At trial, the Shoshone County Assessor (Assessor) testified that an assessment of the disputed property was completed by an employee who personally viewed the property upon which Wilson was residing. The Assessor's records included a map of the disputed property as visually assessed by the employee. This map shows the location of Wilson's mobile home and two sheds. The Assessor testified that the land upon which Wilson was actually residing was the basis for the assessment against parcel # 5000, rather than the land which is designated as parcel # 5000 in

the Assessor's records.[1] The parties stipulated that Gladish paid all taxes assessed against parcel # 4975, and that Wilson paid all taxes assessed against parcel # 5000. The parties also stipulated that the property occupied by Wilson is the property that is described by metes and bounds in the complaint.

The district court found that Wilson had occupied the disputed property since 1991, moved the mobile home onto the property, tore down some buildings on the property, and hauled soil onto the property to raise the land above the flood plain. The district court also found that the visual inspection of the disputed property was the basis for the tax assessment which Wilson paid. On these facts, the district court determined that Wilson had occupied the disputed property adversely to Gladish since 1991, had made substantial improvements to the property, and fulfilled the tax payment requirement of I.C. § 5–210. Specifically, pursuant to the lot number exception to the property tax requirement, the district court ruled that where payment of taxes is done by parcel number rather than by metes and bounds description, such payment is payment of taxes on all property possessed by the adverse claimant. The district court quieted title to the disputed property, as described in the complaint, in Wilson. Gladish appeals.

## II.

### ANALYSIS

Gladish argues on appeal that the trial court erred in finding that substantial improvements were made to the disputed property, that Wilson paid taxes on the disputed property, and that the Assessor properly assessed the disputed property based upon Wilson's use and occupancy. Additionally, Gladish argues that the district court erred by awarding a parcel of property to Wilson with no evidence in the record establishing the quantum of property that was possessed.

■■■ Idaho allows actions for adverse possession under either an oral or written

claim of title. I.C. §§ 5–207, –209. The deeds in Wilson's chain of title do not purport to grant any part of the disputed property. Therefore, Wilson must satisfy the requirements of I.C. §§ 5–209 and –210, which address adverse possession under oral claim of title. *See Persyn v. Favreau*, 119 Idaho 154, 804 P.2d 327 (Ct.App.1990). Idaho Code § 5–209 states:

**5–209. Possession under oral claim of title.**—Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely.

Idaho Code § 5–210 states:

**5–210. Oral claim—Possession defined—Payment of taxes.**—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial enclosure.

2. Where it has been usually cultivated or improved.

Provided however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for a period of five (5) years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law.

The burden of proving all of the essential elements of adverse possession is upon the party seeking title, and every element must be proven with clear and satisfactory evidence. *See Lindgren v. Martin*, 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997); *Berg v. Fairman*, 107 Idaho 441, 443, 690 P.2d 896,

---

1. The Assessor's records describe parcel # 5000 variously as "5000: 286224: Ptn. of Lot 3 20–48–2," "PTN LOT3 20–48–2," "SECT 20 TWN/ RNG 48N 02E," and "48N02E–20–5000." The Assessor's records never describe Wilson's property by a metes and bounds description.

898 (1984); *Loomis v. Union Pacific Railroad Co.*, 97 Idaho 341, 344, 544 P.2d 299, 302 (1975).

### A. Payment of Taxes

The parties stipulated that they each paid taxes only on their respective parcel numbers. Gladish argues that errors in the assessment charged to Wilson, and Gladish having paid all taxes assessed against the Gladish property, prevent Wilson from fulfilling the tax payment requirement of I.C. § 5–210.

The most common type of adverse possession case involves adjoining parcels of land and a boundary dispute as to the property line between the parcels, and frequently involves a fence or natural boundary. This is not such a case. The disputed property here is "carved" out of the larger Gladish property. Wilson did not occupy *both* his property and part of the adjoining property, as has usually been the case with adverse possession claims. To the contrary, *all* of the property occupied by Wilson was legally owned by Gladish. When taxes were assessed to Wilson, the assessment was done under a parcel number corresponding to Wilson's deeded property, and not by a metes and bounds description. Assessment was made following a visual inspection of the disputed property. Based on these facts, the district court concluded that Wilson fulfilled the tax payment requirement through the lot number exception.

■ Idaho Code § 5–210 requires actual payment of taxes assessed with regard to the disputed property. *See Trappett v. Davis*, 102 Idaho 527, 530, 633 P.2d 592, 595 (1981); *Fry v. Smith*, 91 Idaho 740, 741, 430 P.2d 486, 487 (1967); *White v. Boydstun*, 91 Idaho 615, 622, 428 P.2d 747, 754 (1967); *Larson v. Lindsay*, 80 Idaho 242, 248, 327 P.2d 775, 779 (1958); *Balmer v. Pollak*, 67 Idaho 494, 496, 186 P.2d 217, 218 (1947). However, the Idaho Supreme Court has adopted a liberal construction of the payment of taxes requirement imposed by statute. *Flynn v. Allison*, 97 Idaho 618, 620, 549 P.2d 1065, 1067 (1976)

(citing *Standall v. Teater*, 96 Idaho 152, 525 P.2d 347 (1974)). Several exceptions to this requirement exist and have the effect of satisfying the tax payment requirement.[2] *Trappett*, 102 Idaho at 530–31, 633 P.2d at 595–96. Additionally, when both the record owner and the adverse occupant pay taxes on the disputed property during the adverse possession period, the adverse possessor prevails. *Trappett*, 102 Idaho at 534, 633 P.2d at 599.

■ The lot number exception states:

> [I]n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, *and taxes are assessed by lot number or by government survey designation, rather than by metes and bounds description,* payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the . . . statute."

*Roark v. Bentley*, 139 Idaho 793, 86 P.3d 507 (2004) (citing *Scott v. Gubler*, 95 Idaho 441, 443–44, 511 P.2d 258, 260–61 (1973)). The reason behind the lot number exception is that "when taxes are assessed according to some generic description, 'it is impossible to determine from the tax assessment record the precise quantum of property being assessed.' " *Baxter v. Craney*, 135 Idaho 166, 171, 16 P.3d 263, 268 (2000) (citing *Flynn v. Allison*, 97 Idaho at 621, 549 P.2d at 1068).

Another exception which may fulfill the tax payment requirement is derived from two cases, *White*, 91 Idaho 615, 428 P.2d 747, and *Flynn*, 97 Idaho 618, 549 P.2d 1065. Under the *White/Flynn* rule, the tax payment requirement will be satisfied if the adverse possessor occupies and claims the same amount of land upon which he was taxed. *Trappett*, 102 Idaho at 533, 633 P.2d at 598. In *White*, the adverse claimant was taxed on a two-acre tract, even though his deed and the tax assessment records reflected that his record holdings were closer to one acre. Taxes were assessed based on a visual inspection of the combined properties, and as-

---

**2.** Two of these exceptions, the "no taxes" exception and "agreed boundary," are not relevant to our inquiry and are not discussed.

sessed according to acreage. White was awarded title to the disputed tract of 1.12 acres, even though his deeded property amounted to only 0.98 acres, because he paid taxes according to an assessment of two acres.

*Flynn* presents this Court with the most analogous fact pattern and analysis. In 1960, Flynn purchased two adjoining parcels of property. The parcels lay north-south of each other along the Little Salmon River, and were described in terms of "frontage feet" along the river, each measuring 100 frontage feet. The owner of the property to the north of Flynn's holding was Mary Murphy (Murphy). In 1961, Boise Cascade Corporation commissioned a survey in connection with a possible land sale. The sale never occurred, but the survey markers were left in place. Thereafter, Flynn erected a fence, believing the markers to represent the proper boundary, and improved the property he occupied. In 1967, Murphy obtained a survey showing that Flynn's fence encroached onto her property by about 60 feet. Murphy took no action pursuant to this knowledge. In 1969, the Allisons purchased from Murphy the property to the north of Flynn's holding. In the deed to the Allisons, Murphy excepted 60 inches of property along the southern border. Murphy later claimed this was a mistake and that the exception should have been 60 feet, to account for the property Flynn was occupying, but reformation of the deed was denied. Flynn filed an action to quiet title to the disputed 60 frontage feet.

At trial, Flynn testified that he had fenced and occupied only the 200 feet of frontage which he believed was his. The Idaho Supreme Court distinguished *Flynn* from the lot number exception cases, stating:

> The [lot number exception] cases are all similar in one respect, in that it was impossible to tell from the tax assessment record the precise quantum of property being assessed, and thus we were able to hold that where the adverse claimants had paid all taxes on property assessed to them, they had paid taxes on the land adversely pos-

sessed. In contrast, the tax assessment sheets which were admitted into evidence in this case indicate that the property owner is taxed according to the amount of land owned, although that land is not precisely described. Flynn was apparently assessed separately on each of his 100 foot parcels, and the documents in evidence relate only to his northern 100 feet which border on the overlap strip in dispute. These assessment sheets describe that parcel as 'Part NENW .50 acres Sec. 11.' If Flynn had occupied the overlap strip in addition to the land he received under deed, it is obvious that he would be occupying more land than that for which he paid taxes. Consequently, we could not apply the rationale we used in *Standall, Scott* and *Calkins* and hold that Flynn had constructively paid taxes on all land that he actually occupied.[3]

*Flynn,* 97 Idaho at 621, 549 P.2d at 1068. Analogizing to *White,* the Court quieted title to the disputed property in Flynn.

 As noted, Idaho has adopted a liberal construction of the payment of taxes requirement. *Flynn,* 97 Idaho at 620, 549 P.2d at 1067. Additionally, the doctrine of adverse possession focuses primarily on the actions of the adverse possessor. *Trappett,* 102 Idaho at 534, 633 P.2d at 599. The principle taken from *White* and *Flynn* is that an adverse possessor's good faith act of paying taxes on disputed land should be given effect. *Flynn* sets forth the exception that, under an oral claim of title, an adverse possessor who occupies the same quantity of land as that to which he holds title, and who pays taxes on that amount of land, will be deemed to have paid taxes on that land. We discern no reason that the *White/Flynn* exception would require the adverse possessor to be in possession of any part of his deeded land. This principle is not dependant on parcels sharing common boundaries, and we conclude the exception should apply to the facts before this court.

 Gladish also argues that the assessor's failure to properly assess the property

3. *Standall v. Teater,* 96 Idaho 152, 525 P.2d 347 (1974); *Scott v. Gubler,* 95 Idaho 441, 511 P.2d 258 (1973); *Calkins v. Kousouros,* 72 Idaho 150, 237 P.2d 1053 (1951).

impairs Wilson's claim to having paid taxes on the disputed property. We disagree. When taxes to land adversely claimed are in fact paid, an erroneous or uncertain assessment will not affect the efficacy of the actual payments. *White*, 91 Idaho at 622, 428 P.2d at 754 (citing *Calkins v. Kousouros*, 72 Idaho 150, 237 P.2d 1053 (1951); *Urquide v. Flanagan*, 7 Idaho 163, 61 P. 514 (1900); Annot., *Tax Payments by Adverse Claimant*, 132 A.L.R. 216, 227–229 (1941)). In both *White* and *Flynn*, the tax assessments were erroneous. In *Flynn*, the Adams County Assessor testified at trial that he assessed property according to the amount of land given in the deed, and when he inspected the property, he did not survey it, but assumed that the land actually occupied and fenced conformed to the deed. *Flynn*, 97 Idaho at 621, 549 P.2d at 1068. This is substantially similar to the testimony of the Shoshone County Assessor in the instant case. The practice of this Assessor's office was to view the property, and assume that landowners knew where their land was. The Assessor assessed the land occupied by Wilson, with its improvements. We conclude that the Assessor's faulty assessment does not impair Wilson's claim.

As stated in *Flynn*:

Boundary disputes are not uncommon in this state, as witnessed by the relative frequency with which [the Idaho Supreme Court] has wrestled with the problem, and we realize that the adverse possessor faces an almost impossible task in attempting to prove that he paid taxes on the land he claims when the facts show simply that he has mistakenly shifted his boundaries.

*Flynn*, 97 Idaho at 621–22, 549 P.2d at 1068–69. This nearly-impossible task is the source of the exceptions to the tax payment requirement. On the facts of this case, the assessment against Wilson was made following a viewing of the disputed property, and the assessment describes the property being taxed by a generic description which indicated the quantity of property being taxed, but not the specific property itself. Wilson paid taxes according to that assessment. While the district court concluded that Wilson fulfilled the tax payment requirement through

the lot number exception, the facts of *Flynn* are more analogous, and its holding applicable to the facts of this case. *See Matter of Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct.App.1990) (appellate court can affirm trial court's decision on theory different from theory applied by that court). Wilson claimed 0.66 acres of property and was assessed on 0.66 acres of property, and the assessment failed to particularly describe the land being taxed such that it could be identified. We therefore conclude that Wilson met the tax payment requirement of I.C. § 5–210 through the *White/Flynn* exception.

**B. Substantial Improvements and Quantum of Property Quieted in Wilson**

 Gladish also argues that the district court erred in holding that Wilson made substantial improvements to the disputed property. Appellate review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *See Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991). A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. *See Lindgren*, 130 Idaho at 857, 949 P.2d at 1064; *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *See* I.R.C.P. 52(a); *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 547–48, 808 P.2d 1289, 1292–93 (1991). Findings of fact that are based on substantial evidence, even if the evidence is conflicting, will not be overturned on appeal. *See Hunter v. Shields*, 131 Idaho 148, 151, 953 P.2d 588, 591 (1998). However, we exercise free review over the lower court's conclusions of law to determine whether the trial court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *See Whittlesey*, 133 Ida-

ho at 269, 985 P.2d at 1131; *Burns v. Alderman,* 122 Idaho 749, 752–53, 838 P.2d 878, 881–82 (Ct.App.1992). What constitutes an "improvement" is a question of fact. *Cluff v. Bonner County,* 121 Idaho 184, 186, 824 P.2d 115, 117 (1992) (citing *Trask v. Success Mining Co.,* 28 Idaho 483, 490, 155 P. 288, 290 (1916)). The improvement must necessarily vary according to the character of the land, its location, the uses to which it is usually put and all the circumstances bearing on that question. *Id.*

In its findings of fact, the district court expressly found that Wilson hauled 120 cubic yards of fill to raise the level of the disputed property above the flood plain, tore down buildings, extended the water line to serve the property, and moved a mobile home onto the property. Gladish argues that the mobile home was not converted to real property for tax purposes, pursuant to I.C. § 63–304, and therefore it should not be considered an improvement. We need not decide whether a mobile home may constitute an improvement to land for the purpose of an adverse possession claim for that is not the only improvement relied upon by Wilson.

In this case, Wilson not only placed a mobile home on the land, he also made great efforts to bring the land above the level of the flood plain specifically for the purpose of physical occupation of the land, and brought water service to the land. These are "improvements,"[4] and the district court's findings are supported by the evidence. *See Gage v. Davis,* 104 Idaho 48, 655 P.2d 942 (Ct.App.1982) (the district court's finding that the disputed land had been improved when the adverse claimant moved a mobile home onto the property, among other things, was upheld).

Gladish further argues that the district court erred in quieting title to the property as described in the complaint, because there was insufficient evidence presented to establish that Wilson occupied all of the property within that legal description in the manner

required by the doctrine of adverse possession. However, at trial the parties stipulated that Wilson had occupied the disputed property described in the complaint since 1991. Because of this stipulation, it was not error for the district court to award to Wilson the property as legally described in the complaint.

## III.

## CONCLUSION

We conclude the evidence adduced at trial supports the district court's factual findings. While the district court determined that the lot number exception applied, we conclude that the *White/Flynn* exception is more analogous, and that Wilson satisfied the tax payment requirement of I.C. § 5–210 through that exception. Accordingly, the district court's order quieting title in Wilson is not erroneous, and we affirm.

Chief Judge LANSING and Judge PERRY concur.

---

4. While the district court did find "substantial improvements," we note that the legal requirement is only that the land be "improved." I.C. § 5–210; *see also Wood v. Hoglund,* 131 Idaho 700, 704, 963 P.2d 383, 387 (1998) ("[The] parties do not assert that characterization of property as improved, in cases of this nature, has ever required that the property be substantially improved or, indeed, improved to any other measurable degree.")