## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36853

| | | |
|---|---|---|
| VERNON L. KENNEDY and DOROTHY KENNEDY, husband and wife, | ) ) ) | |
| Plaintiffs-Respondents, | ) ) | |
| v. | ) ) | Moscow, November 2010 Term |
| SAMUEL E. SCHNEIDER, JR. and LAURIE SCHNEIDER, if married, as it relates to that real property described as parcel 3, | ) ) ) ) | 2011 Opinion No. 59 Filed: May 26, 2011 |
| Defendants-Appellants, | ) ) | Stephen Kenyon, Clerk |
| and | ) ) | SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION |
| FRED J. STUART and JANE DOE STUART, as it relates to the real property herein described as parcel 1; the heirs, devisees, assigns or statutory trustees of STEEN MEAT CO. LTD, a forfeited corporation, as to parcel 2 hereinafter described; together with the spouses of the above-named persons if they be known or unknown; the unknown heirs, devisees, or legatees of any of the foregoing persons; the successors in interest be they known or unknown; the unknown heirs, claimants, creditors, or parties who might claim an interest in or to the following three (3) parcels of property described in Idaho County, State of Idaho, to wit: SEE FILE FOR DESCRIPTION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | DATED MARCH 17, 2011 IS HEREBY WITHDRAWN. |
| Defendants. | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Hon. John H. Bradbury, District Judge.

The district court's decree quieting title and judgment awarding attorney fees are <u>vacated</u> and the case is <u>remanded</u> for a determination of costs.

Clark and Feeney, Lewiston, for appellants. Jonathan D. Hally argued.

1

Dennis L. Albers, Grangeville, for respondents.

HORTON, Justice

This is an appeal by Samuel Jr. and Laurie Schneider (Schneiders)[1] from the district court's decree quieting title to real property located near Stites, Idaho in favor of Vernon and Dorothy Kennedy (Kennedys) as adverse possessors. The Schneiders also appeal the district court's award of attorney fees to the Kennedys. The Kennedys seek an award of attorney fees incurred on appeal. As we find that there was not substantial, competent evidence to support the district court's findings, we vacate the district court's decree and its judgment awarding attorney fees to the Kennedys and deny the Kennedys' request for attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action relates to property located west of the South Fork of the Clearwater River, approximately a mile and one-half downriver from the village of Stites. In 1924, Vernon Kennedy's great-uncle, William Massey, purchased property from Allen and Bertha Manes. Over the years, the land that William Massey purchased was transferred to members of his family, and it ultimately came to belong to the Kennedys. A drawing of the parcel attached to the 1924 Manes-Massey deed led to an erroneous belief in the Kennedy family as to extent of the land that they owned. When the Kennedys decided to place their property up for sale, they became aware that three parcels of the property that they believed had been owned by their family for generations were the subject of deeds in favor of other parties.

On July 11, 2007, the Kennedys initiated this quiet title action, asserting ownership of the three parcels of land as adverse possessors under a written claim of title. Default judgment in favor of the Kennedys was entered against the titleholders of record as to two of the parcels. The Schneiders answered and defended the Kennedys' claim as to the third parcel.

Following a one-day court trial, on June 23, 2009, the district court issued a memorandum decision finding that the Kennedys had proved the elements of their claim of adverse possession under a written claim of title by clear and satisfactory evidence. The court

---

[1] The Kennedys filed suit against Samuel Schneider, Jr. and Jane Doe Schneider. The Schneider answer also referred to Samuel Schneider, Jr. and Jane Doe Schneider. Laurie Schneider's name did not appear in the pleadings until the Schneiders filed their notice of appeal. Thus, the district court decisions reference only Samuel Schneider, Jr.

found that Vernon Kennedy had possessed the property since 1988, that there was a written instrument "sufficient to create color of title" in favor of the Kennedys, that the property had been exclusively used by the Kennedys and their predecessors, that the possession had been continuous, and, most significantly to this appeal, that both the Kennedys and the Schneiders had paid taxes on the property. The district court then applied the rule announced by this Court in *Trappett v. Davis*, 102 Idaho 527, 534, 633 P.2d 592, 599 (1981), that "when both the record owner and the adverse occupant pay taxes on the disputed property during the adverse possession period, the adverse possessor prevails." Thereafter, on July 15, 2009, the district court entered a decree quieting title in the disputed property in favor of the Kennedys.

On August 6, 2009, the district court received oral argument on the Kennedys' request for an award of attorney fees and indicated its intention to award attorney fees to them. On August 28, 2009, the district court issued a memorandum opinion in which it concluded that the Schneiders had frivolously defended the action, thus warranting an award of attorney fees to the Kennedys pursuant to I.C. § 12-121. The district court awarded the Kennedys $6,137.50 in attorney fees.[2] The Schneiders timely appealed from the decree quieting title and the order awarding attorney fees to the Kennedys.

## II. STANDARD OF REVIEW

Our standard of review is well-established. Findings of fact will not be set aside on appeal unless they are clearly erroneous. *Chen v. Conway*, 121 Idaho 1000, 1004, 829 P.2d 1349, 1353 (1992) (citing I.R.C.P. 52(a)). Where findings of fact are supported by substantial and competent, though conflicting, evidence, they are not clearly erroneous and thus will not be disturbed by this Court. *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). This Court exercises free review over the district court's conclusions of law to determine whether the court correctly stated the applicable law and whether the legal conclusions are sustained by the facts found. *Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999).

## III. ANALYSIS

The Schneiders present a narrow challenge to the district court's determination that the Kennedys established their claim of adverse possession. The Schneiders assert that the district court's finding that the Kennedys paid taxes on the disputed property is clearly erroneous.

---

[2] The district court's order awarding attorney fees was entered on August 6, 2009, in advance of the memorandum opinion.

Consequently, they argue, the district court erred in its conclusion that the Kennedys proved the elements of adverse possession. Working from these premises, they assert that the district court abused its discretion by awarding attorney fees to the Kennedys.

**A. The district court's finding that the Kennedys paid taxes on the disputed parcel is clearly erroneous, as it failed to acknowledge that tax parcels in Idaho County are based upon metes and bounds descriptions.**

Idaho Code § 5-207 provides as follows:

> When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property under such claim, for twenty (20) years, the property so included is deemed to have been held adversely except that when it consists of a tract divided into lots, the possession of one (1) lot is not deemed a possession of any other lot of the same tract.

Idaho Codes § 5-210 further provides:

> [I]n no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of twenty (20) years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law.

In *DeChambeau v. Estate of Smith*, 132 Idaho 568, 571, 976 P.2d 922, 925 (1999), this Court identified the well-established elements that a party must establish by clear and satisfactory evidence in order to establish adverse possession upon a written claim of title:

> (1) that they entered into possession, as that term is defined by I.C. § 5-208, of the disputed property; (2) under a claim of title . . . (3) exclusive of other right; (4) that there has been a continuous occupation and possession of the disputed property described [in the written instrument]; (5) that they have so held the property for [the statutory period][3]; and (6) that they have paid all taxes, state, county or municipal, which have been levied and assessed upon such land according to law.

(quoting *Rice v. Hill City Stock Yards Co.,* 121 Idaho 576, 580, 826 P.2d 1288, 1292 (1992)).

---

[3] In 2006, the Legislature extended the required period of possession from five to twenty years. 2006 Idaho Sess. Laws ch. 158, §§ 4, 5, p. 475.

4

The Schneiders' appeal has focused on the sixth element, specifically, whether there is substantial evidence to support the district court's finding that the Kennedys paid all taxes for the disputed property.

The district court's findings regarding payment of taxes in its memorandum decision are not extensive.

> The Idaho County Recorder included the property in the Schneider's [sic] name and they paid taxes on it. The same property, however, was also included in the property for which the Kennedys paid taxes. . . .
>
> There is no material question that both the Schneider family and the Kennedys have paid property taxes on the disputed property for the past twenty years.
>
> Leah Mager is a State Tax Commission certified appraiser who appraises real property in Idaho county [sic] for the Idaho County Assessor. The county inspects and appraises all the property in Idaho County on a rotating schedule every five years. She testified that she is familiar with and has appraised the disputed property and included its assessed value in the Kennedy tax bill.
>
> Carolyn [sic] Park works in the mapping department for the Idaho County Assessor. She testified that tax payers [sic] pay by the tax number assigned to property by the assessor. She stated that the disputed property was included in both tax numbers. She testified that given the number of acres for which the Kennedys were taxed, that the disputed property had to have been included in their tax parcel. The evidence is clear and convincing that both the Kennedys and the Schneider family have paid taxes on the disputed property for more than twenty years.

In its memorandum decision awarding the Kennedys attorney fees, the district court acknowledged the Schneiders' challenge to the sufficiency of evidence that the Kennedys had paid taxes on the disputed property, noting that Mr. Schneider "argues further that the tax lot exception does not apply because each tax lot number had a metes and bounds description at the assessor's office." The district court then expanded its discussion of the issue, discussing applicable case law, and ultimately concluding that "the uncontested and irrefutable testimony" of Leah Mager and Carolynn Park established "that the value of the disputed property was included in the Kennedy's [sic] tax assessment."

During the relevant time,[4] the Kennedys paid taxes based upon the following parcel description from the Idaho County Assessor:

T32N R4E SEC 20  15.066 AC

---

[4] In 1999, the Kennedys acquired a parcel of land that had previously been a railroad right-of-way. Until that time, they had been assessed taxes based upon ownership of 14.588 acres. The railroad right-of-way is not part of the disputed parcel.

5

TAX #'S 16, 28 & 30 ALONG
WITH A 50' WIDE STRIP
OF RR ROW ALONG W SIDE OF
TAX #28 LESS TAX #'S 113,
220, 236, 268 & 269

The Schneiders paid taxes based upon the following parcel description:

T32N R4E SEC 20  60.03 AC
SE4NE4 & NE4SE4 LESS TAX #'S
16, 17, 18, 20, 21, 80,
81, 85

There is no evidence that suggests that any portion of the disputed parcel falls within tax parcels 16, 28, 30 or the railroad right-of-way. Rather, as evidence that they satisfied the tax payment requirement, the Kennedys point to the fact that they paid taxes for a parcel approximately the same size as they unquestionably own plus the disputed parcel. As will be discussed later, it is "uncontested and irrefutable" that both parties historically paid taxes for more land than they actually owned. The critical questions presented by this appeal relate to the Idaho County Assessor's methodology for identifying the property for which taxes were paid and specifically, whether the Kennedys paid taxes for the disputed parcel.

In *White v. Boydstun*, 91 Idaho 615, 428 P.2d 747 (1967), the Court considered the tax payment requirement. Taxes were paid on "the Fleharty tract," and the pivotal question was whether the taxes assessed for the Fleharty tract were simply for Parcel A, which was unquestionably owned by White, or whether the assessment included the disputed Parcel B. This Court placed particular weight upon the testimony of the county assessor that he had "physically examined tract A and B and assessed the whole to the Flehartys." 91 Idaho at 621, 428 P.2d at 753. This Court observed that "although any assessments made were charged to the Flehartys, it is quite possible that no taxes were assessed on parcel B." *Id.* Under these circumstances, this Court found that substantial evidence supported the trial court's finding that White and his predecessor "paid whatever taxes were assessed and levied on parcel B." *Id. White* is significant for the proposition that the adverse possession element requiring payment of taxes may be satisfied when the tax assessment is based upon a physical examination of the parcel, rather than a metes and bounds description.

This Court returned to the tax payment requirement in *Scott v. Gubler*, 95 Idaho 441, 511 P.2d 258 (1973). In *Scott*, this Court considered a claim of adverse possession of a disputed

6

parcel between two government lots (3 and 4) located in Jerome County.  We upheld the district court's finding that taxes had been paid on the disputed parcel, noting that

> there is no evidence in the record as to how Lots 3 and 4 were described on the assessment roll of the Jerome County Assessor's Office during the period from 1959 to 1968.  Hazel Gubler's 1972 Jerome County taxpayer's statement describes Lot 3 by its government survey designation rather than by metes and bounds.  There was no evidence of visual inspection of Lots 3 and 4 by [the] Jerome County Assessor after Scott's fence was installed.

*Id*. at 444, 511 P.2d at 261.

In *Flynn v. Allison*, 97 Idaho 618, 549 P.2d 1065, (1976), the adverse possessor inadvertently encroached upon his neighbor's property because he believed stakes placed by a third party's private survey marked the boundaries of his property.  *Id*. at 619, 549 P.2d at 1066.  By doing so, he occupied the actual acreage he owned but shifted its boundaries sixty feet to the north.  *Id.*  The adverse possessor's payment of taxes on his actual acreage, payments which he reasonably believed covered the property he occupied, was sufficient to satisfy the tax payment requirement.  97 Idaho at 621, 549 P.2d at 1068.

In *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981) this Court attempted to bring clarity to an area which was, by then, abounding with confusion.  We explained:

> In the general case (which is by no means the most typical case), I.C. § 5-210 requires *actual* payment of taxes which are assessed to the disputed property. [Citations omitted.] Of critical importance is the assessor's actual basis for valuation of the property in question, *i.e.*, whether his assessment was based on estimated acreage derived from physical inspection, value based on frontage feet, area calculated from a metes and bounds description, or some other method of valuation. The general tax rule focuses on actual payment as evidenced by the assessor's actual valuation. However, this Court has fashioned several corollaries and exceptions to the general rule which, when applied, have the effect of satisfying the tax requirement (by fiction or otherwise), even though it cannot be determined that the adverse claimant actually paid property tax on the disputed land.
> The first and most frequent example is the "lot number" corollary.
>
> > "[I]n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, and taxes *are assessed by lot number or by government survey designation, rather than by metes and bounds description*, payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the . . . statute." *Scott v. Gubler*, 95 Idaho 441, 443-44, 511 P.2d 258,

7

260-61 (1973) (emphasis added, footnote omitted).

> . . . The primary reason behind the lot number corollary is as follows: when taxes are assessed according to some generic description, "it (is) impossible to determine from the tax assessment record the precise quantum of property being assessed. . . ." *Flynn v. Allison*, 97 Idaho at 621, 549 P.2d at 1068. In the instant case, the properties of all parties involved were assessed on the basis of metes and bounds descriptions found in the respective deeds. Hence, Ogborn and the Trappetts cannot take advantage of the lot number corollary.

102 Idaho at 530-31, 633 P.2d at 595-96 (emphasis original).

The district court found that the Kennedys satisfied the tax payment requirement under *White v. Boydstun* because, for the length of the statutory period, the Kennedys were assessed taxes equal to the amount of land they actually occupied. This legal conclusion is inconsistent with our explanation in *Trappett*. Rather, we must carefully examine the testimony upon which the district court based its factual finding that the Kennedys actually paid taxes for the disputed parcel. We first consider the testimony of Leah Mager, the assessor who examined the property and whom the district court found had "appraised the disputed property and included its assessed value in the Kennedy tax bill."

Leah Mager's testimony was not consistent with the district court's characterization. She testified that in her visit to the Kennedy property in 2003, she "assumed [a portion of the disputed property] was Kennedy's" based upon the appearance of the property, explaining that the assumption was based "[j]ust by the way the land is sitting, you come around there, you just assume everything from the green house up is Kennedy's." Although the assessed valuation of the Kennedy property increased, Mager testified the increase was the result of a change in market conditions, rather than based upon an increase in the number of acres owned by the Kennedys. However, Mager also testified that she did not calculate the acreage owned by the Kennedys during her visit to the property. Rather, she explained that the tax assessment was based upon "[t]he land, the legal description. We go by what the legal description says on the file for the land." Based upon this testimony, there is no substantial evidence supporting the district court's conclusion that the Kennedys paid taxes on the disputed property as a result of Mager's visual inspection of the property.

We next consider the district court's finding that Carolynn Park, the mapper from the assessor's office, testified "that the disputed property was included in both tax numbers." A careful review of her testimony clearly demonstrates that both the Schneiders and the Kennedys

8

paid taxes for acreages in excess of that which they actually owned. After this controversy arose, at the request of the parties' attorneys, Ms. Park used a computerized mapping program to ascertain the amount of property actually owned by each of the parties. The Schneiders had been taxed based upon ownership of a parcel 60.03 acres in size. After remapping and recalculating the parcels for which the Schneiders were deeded titleholders, the recalculated acreage was 46.864 acres. In 2006, the Kennedys were assessed taxes based upon ownership of 15.066 acres. Based upon the remapping, that figure was reduced to 13.521 acres.[5]

At one point in her testimony, Carolynn Park testified that it appeared that both parties "perhaps, paid tax on the same piece [of land]." In her later testimony, she clarified, stating "I don't believe I said [Mr. Kennedy] was paying taxes on that area. He was paying taxes on Tax 16 and his other tax numbers." Ms. Park then testified that each tax parcel was identified by a metes and bounds description, and that a tax parcel is "just a shortened legal description for the Assessor's Office." Thus, there was no substantial evidence supporting the district court's finding that each of the parties paid taxes on the disputed parcel. To the contrary, it is evident that, unlike *White v. Boydstun* and *Scott v. Gubler*, the tax parcel exception is inapplicable here as the tax parcels were not "some generic description" but rather were based upon metes and bounds descriptions. In short, although the Kennedys undoubtedly paid taxes for more land than they owned, under the methodology employed by the Idaho County Assessor there is simply no evidence that they paid taxes on the disputed parcel.

Because there is no substantial evidence supporting the district court's finding that the Kennedys paid taxes on the disputed parcel, we reverse the district court's judgment and vacate the decree quieting title in the parcel in favor of the Kennedys.

**B. Because the Kennedys failed to prove the necessary elements of their claim of adverse possession, the district court's award of attorney fees and costs in their favor must be vacated.**

As we reverse the district court's finding that the Kennedys proved their claim of adverse possession, the district court's award of attorney fees and costs in their favor must be vacated. *Stanley v. Lennox Indus., Inc.*, 140 Idaho 785, 789, 102 P.3d 1104, 1108 (2004). This matter will be remanded to the district court for a determination of the costs to which the Schneiders are

---

[5] The difference in the Kennedy's acreage is largely attributable to the acreage assigned to Tax Parcel 28.

9

entitled as prevailing parties below. *Ray v. Frasure*, 146 Idaho 625, 630, 200 P.3d 1174, 1179 (2009).

## C. Because the Kennedys are not the prevailing parties in this appeal, they are not entitled to an award of attorney fees.

The Kennedys request an award of attorney fees on appeal pursuant to I.C. § 12-121. As they have not prevailed in this action, they are not entitled to an award of attorney fees. *Kelley v. Yadon*, No. 36705, 2011 WL 310366, at *5 (Feb. 2, 2011).

## IV. CONCLUSION

We reverse the district court's finding that the Kennedys proved their claim of adverse possession. Accordingly, we vacate the decree quieting title in favor of the Kennedys and the district court's award of attorney fees and costs. As the Schneiders were the prevailing party in the litigation below, we remand for the district court to determine the costs to which the Schneiders are entitled. We deny the Kennedys' request for an award of attorney fees on appeal. Costs on appeal to the Schneiders.

Chief Justice EISMANN and Justices BURDICK and J. JONES **CONCUR**.

W. JONES, Justice, dissenting:

The Court today departs from a century of cases that construed the tax-payment requirement liberally in favor of a good-faith adverse claimant. Upon considering the Kennedys' Motion for Reconsideration, I must respectfully dissent.

## I. The Kennedys Should Prevail on Their Adverse Possession Claim Because They Paid Taxes on Roughly the Same Number of Acres They Occupied

This Court has repeatedly indicated that it will liberally construe the tax requirement set forth in I.C. § 5-210(2). *E.g. Flynn v. Allison*, 97 Idaho 618, 620, 549 P.2d 1065, 1067 (1976). As this Court warned in *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981), though, "a good deal of the judicial gloss has evolved mechanically and without benefit of supporting rationale, a criticism which might well be leveled at the tax payment requirement itself." *Id.* at 530, 633 P.2d at 595. Although we have outlined the parameters of some of the exceptions to the tax requirement, we still have not clearly articulated the universal principles underlying those exceptions. Whatever objectives the tax requirement might serve, however, the Court's decision today accomplishes none of them. The Court delivers no rationale as to why the Kennedys

10

should lose when the multitude of other adverse claimants who did not comply with the strict letter of I.C. § 5-210(2) have nonetheless prevailed.

There appears to be three potential justifications for requiring adverse claimants to pay taxes on land they possess. The tax requirement might: (1) ensure that the State receives taxes; (2) provide notice to the true owner of possible adverse possessors; or (3) ensure the adverse possessor is acting in good faith. Averill G. Mix, Comment: *Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism*, 9 Santa Clara Lawyer 244, 250 (1968). We can dismiss the first theory out of hand, as this Court has apparently never suggested that county assessors lack the tools necessary to collect property taxes from Idaho's citizens or that it is necessary to require adverse claimants to pay taxes when the original owner is likely paying taxes on the same parcel. *See Trappett*, 102 Idaho at 534, 633 P.2d at 599 (holding in favor of the adverse claimant, stating that the ensuring-taxation theory "is of no import here, the taxing authority having received twice its due").

The second theory, notice, may be why the territorial government enacted the tax requirement in the first place. In the late nineteenth century, railroads and other interests held vast tracts of undeveloped land in Idaho and other western states, often in largely uninhabited areas. The requirement allowed landholders a warning before squatters could obtain a legal interest in their property. Mix, *supra*, at 254 & n.55.

The notice theory no longer applies in Idaho either. "Given that urbanization has replaced the ownership of large tracts of undeveloped land that drove adoption of the tax payment requirement, today the notice to the owner rationale of that requirement is devoid of any significant merit." Jack I. Garvey, *Resolving Boundary Disputes in California: A Radical Reassessment in Light of Proposition 13*, 43 U.S.F. L. Rev. 829, 844 (2009). The notice theory is especially inapplicable in boundary disputes between neighbors. Claimants in such cases will naturally put their neighbors on notice of possible intrusion by cultivating, improving, enclosing, or extracting resources from a disputed parcel, which are facts the claimant must establish under I.C. § 5-208. We have accordingly expressed that it is "open to dispute" whether the tax requirement provides notice to the owner of adverse claims. *Scott v. Gubler*, 95 Idaho 441, 445, 511 P.2d 258, 262 (1973). Based on the plain text of the statute, we have also held that the adverse claimant need not pay any tax on the property where no taxes were assessed. *Hogan v.*

11

*Blakney*, 73 Idaho 274, 282, 251 P.2d 209, 214 (1952). This rule makes it less likely that the true owner will be put on notice of the adverse claimant.

The good-faith theory seems to be the one principle that has guided this Court for the past 100 years. Since the very early 1900s, the Court has resolved uncertainties about whether the tax requirement was satisfied in favor of the good-faith claimant. *See Bayhouse v. Urquides*, 17 Idaho 286, 297–98, 105 P. 1066, 1069–70 (1909) (noting that the claimant had inadvertently fenced in a portion of the true owner's lot while relying on an erroneous survey). The good-faith theory underlies the two most prominent exceptions that Idaho's courts have employed to avoid a literal interpretation of the tax requirement: the lot-number exception and the so-called "*White/Flynn* rule," which could more descriptively be named the "same-acreage exception." Both are legal fictions that resolve ambiguities about whether the claimant actually paid taxes in favor of a good-faith claimant.

The lot-number exception allows the claimant to meet the tax requirement where he or she pays taxes on a parcel assessed by lot number or government survey. *Mulder v. Stands*, 71 Idaho 22, 26, 225 P.2d 463, 466 (1950). The reason for this exception is that it is uncertain how many acres for which the claimant has been assessed. *Roark v. Bentley*, 139 Idaho 793, 796, 86 P.3d 507, 510 (2004). In such cases, rather than require the claimant to show that he or she was actually assessed on the disputed property, this Court simply employs a fiction imputing tax payments to land the claimant did not actually own. *E.g. Hyde v. Lawson*, 94 Idaho 886, 891, 499 P.2d 1242, 1247 (1972); *Beneficial Life Ins. Co. v. Wakamatsu*, 75 Idaho 232, 242, 270 P.2d 830, 836 (1954) (property taxed according to government surveys).

More relevant to this case is the same-acreage exception. Under this rule, "the tax payment requirement will be satisfied if the adverse possessor occupies the same amount of land upon which he was taxed." *Wilson*, 140 Idaho at 865–66, 103 P.3d at 478–79 (citing *White v. Boydstun*, 91 Idaho 615, 428 P.2d 747 (1967) and *Flynn*, 97 Idaho at 621, 549 P.2d at 1068). In these cases, a claimant may prevail by actually occupying an area different from but the same size as the parcel that he or she actually owns and pays taxes on. The Court has taken this exception to the logical extreme. In *Wilson*, the Court held that a claimant satisfied the tax requirement even though he did not actually occupy any of his own land but, rather, solely occupied a similarly sized "island" of land completely within a neighbor's property. *Id.* at 866,

103 P.3d at 479. The Court noted that "an adverse possessor's good faith act of paying taxes on disputed land should be given effect." *Id.*

As commentators have warned, "a statute that rigidly specifies an evidentiary test for good faith can easily work an injustice because of the subjective nature of good faith." Mix, *supra*, at 251. The Majority, unfortunately, does just that. It is uncontested that the Kennedys and their family occupied the disputed land under written color of title in good faith for generations. The Kennedys actually occupied roughly 14 acres, approximately 10 of which they owned and 4 of which constitute the disputed land. Before 1999, they were assessed for 14.6 acres, and afterward they were assessed for 15 acres. They therefore paid tax on an acreage substantially similar to what they actually occupied, apparently believing that the disputed land was included within their tax bill. Reversing the judgment in the Kennedys' favor denies an otherwise meritorious good-faith claim.

The Majority reasons that the Kennedys have not "actually" paid taxes on the disputed property because the metes and bounds descriptions on the County's books indicate that the Kennedys do not own the disputed property. It cites prior cases in which we held that the lot-number exception does not apply when the claimant's land is assessed according to a metes and bounds description. *Trappett*, 102 Idaho 530–31, 633 P.2d at 595–96. Of course, where a claimant pays taxes on an acreage equivalent to that described in a metes and bounds or other specific description, no amount of legal fiction can allow the claimant to meet the tax requirement. *See Baxter v. Craney*, 135 Idaho 166, 171, 16 P.3d 263, 269 (2000) (finding that the adverse possessors did not meet the tax requirement because it was possible to tell from a government-survey description how much acreage on which they paid taxes). There are no cases, however, wherein the adverse possessor was assessed according to a metes and bounds description but paid taxes on a larger area equivalent to both the deeded property and the disputed property the claimant occupied.

Despite what it says today to the contrary, the truth is that this Court has never required a good-faith adverse possessor to show that he or she "actually" paid taxes on the disputed property. Such a feat would be nearly impossible in most cases. *See Wilson*, 140 Idaho at 867, 103 P.3d at 480 (stating that the "nearly-impossible task" of showing tax payment in boundary disputes "is the source of the exceptions to the tax payment requirement"). This Court indulges in a legal fiction for claimants who do not actually pay taxes on the disputed land, but are

13

assessed by lot number for an unknown amount of acreage. *Calkins v. Kousouros*, 72 Idaho 150, 155, 237 P.2d 1053, 1057 (1951). It also indulges in a legal fiction for claimants who do not actually pay taxes on the disputed land, but instead pay tax on their deeded property, which could be located just about anywhere, so long as the deeded and occupied areas happen to be similarly sized. *Flynn*, 97 Idaho at 622, 549 P.2d 1069. It therefore makes no sense that this fiction would not apply to situations like the current one in which the taxed acreage is equivalent to or greater than the occupied acreage, solely because the claimants are assessed by metes and bounds.

I therefore respectfully dissent.