W. JONES, Justice,
dissenting.
The Court today departs from a century of eases that construed the tax-payment requirement liberally in favor of a good-faith adverse claimant. Upon considering the Kennedys’ Motion for Reconsideration, I must respectfully dissent.
I. The Kennedys Should Prevail on Their Adverse Possession Claim Because They Paid Taxes on Roughly the Same Number of Acres They Occupied
This Court has repeatedly indicated that it will liberally construe the tax requirement set forth in I.C. § 5-210(2). E.g. Flynn v. Allison, 97 Idaho 618, 620, 549 P.2d 1065, 1067 (1976). As this Court warned in Trappett v. Davis, 102 Idaho 527, 633 P.2d 592 (1981), though, “a good deal of the judicial gloss has evolved mechanically and without benefit of supporting rationale, a criticism which might well be leveled at the tax payment requirement itself.” Id. at 530, 633 P.2d at 595. Although we have outlined the parameters of some of the exceptions to the tax requirement, we still have not clearly articulated the universal principles underlying those exceptions. Whatever objectives the tax requirement might serve, however, the Court’s decision today accomplishes none of them. The Court delivers no rationale as to why the Kennedys should lose when the multitude of other adverse claimants who did not comply with the strict letter of I.C. § 5-210(2) have nonetheless prevailed.
There appeal’s to be three potential justifications for requiring adverse claimants to pay taxes on land they possess. The tax requirement might: (1) ensure that the State receives taxes; (2) provide notice to the true *447 owner of possible adverse possessors; or (3) ensure the adverse possessor is acting in good faith. Averill G. Mix, Comment: Payment of Taxes as a Condition of Title by Adverse Possession: A Nineteenth Century Anachronism, 9 Santa Clara Lawyer 244, 250 (1968). We can dismiss the first theory out of hand, as this Court has apparently never suggested that county assessors lack the tools necessary to collect property taxes from Idaho’s citizens or that it is necessary to require adverse claimants to pay taxes when the original owner is likely paying taxes on the same parcel. See Trappett, 102 Idaho at 534, 633 P.2d at 599 (holding in favor of the adverse claimant, stating that the ensuring-taxation theory “is of no import here, the taxing authority having received twice its due”).
The second theory, notice, may be why the territorial government enacted the tax requirement in the first place. In the late nineteenth century, railroads and other interests held vast tracts of undeveloped land in Idaho and other western states, often in largely uninhabited areas. The requirement allowed landholders a warning before squatters could obtain a legal interest in their property. Mix, supra, at 254 & n. 55.
The notice theory no longer applies in Idaho either. “Given that urbanization has replaced the ownership of large tracts of undeveloped land that drove adoption of the tax payment requirement, today the notice to the owner rationale of that requirement is devoid of any significant merit.” Jack I. Garvey, Resolving Boundary Disputes in California: A Radical Reassessment in Light of Proposition 13, 43 U.S.F. L.Rev. 829, 844 (2009). The notice theory is especially inapplicable in boundary disputes between neighbors. Claimants in such cases will naturally put their neighbors on notice of possible intrusion by cultivating, improving, enclosing, or extracting resources from a disputed parcel, which are facts the claimant must establish under I.C. § 5-208. We have accordingly expressed that it is “open to dispute” whether the tax requirement provides notice to the owner of adverse claims. Scott v. Gubler, 95 Idaho 441, 445, 511 P.2d 258, 262 (1973). Based on the plain text of the statute, we have also held that the adverse claimant need not pay any tax on the property where no taxes were assessed. Hogan v. Blakney, 73 Idaho 274, 282, 251 P.2d 209, 214 (1952). This rule makes it less likely that the true owner will be put on notice of the adverse claimant.
The good-faith theory seems to be the one principle that has guided this Court for the past 100 years. Since the very early 1900s, the Court has resolved uncertainties about whether the tax requirement was satisfied in favor of the good-faith claimant. See Bayhouse v. Urquides, 17 Idaho 286, 297-98, 105 P. 1066, 1069-70 (1909) (noting that the claimant had inadvertently fenced in a portion of the trae owner’s lot while relying on an erroneous survey). The good-faith theory underlies the two most prominent exceptions that Idaho’s courts have employed to avoid a literal interpretation of the tax requirement: the lot-number exception and the so-called “White/Flynn rule,” which could more descriptively be named the “same-acreage exception.” Both are legal fictions that resolve ambiguities about whether the claimant actually paid taxes in favor of a good-faith claimant.
The lot-number exception allows the claimant to meet the tax requirement where he or she pays taxes on a parcel assessed by lot number or government survey. Mulder v. Stands, 71 Idaho 22, 26, 225 P.2d 463, 466 (1950). The reason for this exception is that it is uncertain how many acres for which the claimant has been assessed. Roark v. Bentley, 139 Idaho 793, 796, 86 P.3d 507, 510 (2004). In such cases, rather than require the claimant to show that he or she was actually assessed on the disputed property, this Court simply employs a fiction imputing tax payments to land the claimant did not actually own. E.g. Hyde v. Lawson, 94 Idaho 886, 891, 499 P.2d 1242, 1247 (1972); Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 242, 270 P.2d 830, 836 (1954) (property taxed according to government surveys).
More relevant to this ease is the same-acreage exception. Under this rale, “the tax payment requirement will be satisfied if the adverse possessor occupies the same amount of land upon which he was taxed.” Wilson v. *448 Gladish, 140 Idaho 861, 865-66, 103 P.3d 474, 478-79 (2004) (citing White v. Boydstun, 91 Idaho 615, 428 P.2d 747 (1967) and Flynn, 97 Idaho at 621, 549 P.2d at 1068). In these cases, a claimant may prevail by actually occupying an area different from but the same size as the parcel that he or she actually owns and pays taxes on. The Court has taken this exception to the logical extreme. In Wilson, the Court held that a claimant satisfied the tax requirement even though he did not actually occupy any of his own land but, rather, solely occupied a similarly sized “island” of land completely within a neighbor’s property. Id. at 866, 103 P.3d at 479. The Court noted that “an adverse possessor’s good faith act of paying taxes on disputed land should be given effect.” Id.
As commentators have warned, “a statute that rigidly specifies an evidentiary test for good faith can easily work an injustice because of the subjective nature of good faith.” Mix, supra, at 251. The Majority, unfortunately, does just that. It is uncontested that the Kennedys and their family occupied the disputed land under written color of title in good faith for generations. The Kennedys actually occupied roughly 14 acres, approximately 10 of which they owned and 4 of which constitute the disputed land. Before 1999, they were assessed for 14.6 acres, and afterward they were assessed for 15 acres. They therefore paid tax on an acreage substantially similar to what they actually occupied, apparently believing that the disputed land was included within their tax bill. Reversing the judgment in the Kennedys’ favor denies an otherwise meritorious good-faith claim.
The Majority reasons that the Kennedys have not “actually” paid taxes on the disputed property because the metes and bounds descriptions on the County’s books indicate that the Kennedys do not own the disputed property. It cites prior cases in which we held that the lot-number exception does not apply when the claimant’s land is assessed according to a metes and bounds description. Trappett, 102 Idaho at 530-31, 633 P.2d at 595-96. Of course, where a claimant pays taxes on an acreage equivalent to that described in a metes and bounds or other specific description, no amount of legal fiction can allow the claimant to meet the tax requirement. See Baxter v. Craney, 135 Idaho 166, 171, 16 P.3d 263, 269 (2000) (finding that the adverse possessors did not meet the tax requirement because it was possible to tell from a government-survey description how much acreage on which they paid taxes). There are no cases, however, wherein the adverse possessor was assessed according to a metes and bounds description but paid taxes on a larger area equivalent to both the deeded property and the disputed property the claimant occupied.
Despite what it says today to the contrary, the truth is that this Court has never required a good-faith adverse possessor to show that he or she “actually” paid taxes on the disputed property. Such a feat would be nearly impossible in most cases. See Wilson, 140 Idaho at 867, 103 P.3d at 480 (stating that the “nearly-impossible task” of showing tax payment in boundary disputes “is the source of the exceptions to the tax payment requirement”). This Court indulges in a legal fiction for claimants who do not actually pay taxes on the disputed land, but are assessed by lot number for an unknown amount of acreage. Calkins v. Kousouros, 72 Idaho 150, 155, 237 P.2d 1053, 1057 (1951). It also indulges in a legal fiction for claimants who do not actually pay taxes on the disputed land, but instead pay tax on their deeded property, which could be located just about anywhere, so long as the deeded and occupied areas happen to be similarly sized. Flynn, 97 Idaho at 622, 549 P.2d at 1069. It therefore makes no sense that this fiction would not apply to situations like the current one in which the taxed acreage is equivalent to or greater than the occupied acreage, solely because the claimants are assessed by metes and bounds.
I therefore respectfully dissent.